T. EQUIPMENT CORP. and C.R.C. Co., Inc., Plaintiffs, Appellees,

v.

MASSACHUSETTS LABORERS' DISTRICT COUNCIL, Defendant, Appellant.

No. 98–1148.

United States Court of Appeals, First Circuit.

Heard Sept. 10, 1998.

Decided Jan. 15, 1999.

Theodore T. Green, with whom Michael S. Bearse, Michelle Simon, Laborers' International Union of North America, were on brief for appellant.

James F. Grosso with whom O'Reilly & Grosso, P.C. were on brief for appellees.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

BOWNES, Senior Circuit Judge.

This is an appeal from the district court's grant of summary judgment to plaintiffs-appellees T. Equipment Corporation and C.R.C. Co., Inc. (Contractors) and its denial of defendant-appellant's Massachusetts Laborers' Union District Council (Laborers) motion for summary judgment. The case arises from a jurisdictional dispute between Local 24 of the Carpenters Union (Carpenters) and the Laborers about the allocation of "stripping" work for plaintiffs-contractors. The issue before us has not been directly addressed before by this circuit: What is the consequence of an arbitration award for damages to one union (Laborers) because of the breach of a collective bargaining agreement by the employers of members of that union in the face of an NLRB decision under 29 U.S.C.A. § 160(k)(10(k)) awarding the underlying work to another union (Carpenters)? The district court found that the NLRB § 10(k) decision nullified the damages award. We affirm.

I

The facts are not in dispute. The plaintiffs-contractors were subcontractors to J.F. White Contracting Company. White was the main contractor for the construction of new railroad stations and the renovation of railroad bridges to facilitate the extension of commuter rail service on the Old Colony Railway. T. Equipment's subcontract required bridge repair and structural work on the rail system. C.R.C.'s subcontractual work entailed building the substructural concrete foundations for the railroad stations. Both subcontracts involved extensive concrete work. Casting concrete requires the use of wood or metal forms into which the concrete is poured. After the concrete has hardened sufficiently so that it can stand on its own, the forms are "stripped" from the concrete and moved to the site of the next job.

There was a long-standing collective bargaining agreement between the Massachusetts Contractors Association and the Laborers to the effect that "stripping" would be done jointly by members of the Carpenters' and Laborers' Unions. The latest manifestation of this agreement was a letter from the Laborers' Union representative to J.F. White dated October 7, 1994, stating: "It was also agreed that the stripping of concrete forms is to be in a manner of equal numbers … [equal numbers of members of the Carpenters' and Laborers' Unions]."

The portion of the construction project giving rise to the work dispute began in May of 1995 and was completed in May of 1996. The site of the work was a railroad station in Weymouth, Massachusetts. The work for Contractor C.R.C. was mainly that of erecting concrete footings. Its crew for this work consisted of two carpenters and two laborers. The carpenters erected forms for the footings and stripped the forms from the concrete after it had hardened. The laborers cleared and oiled the forms and carried them to the next construction point. On several occasions in June of 1995 the laborers assisted the carpenters in stripping the forms. In late June the Carpenters complained to the C.R.C. labor foreman that the stripping should be done by the carpenters. The Laborers promptly countered that the stripping should be done with at least fifty percent laborers.

About the end of June 1995, C.R.C. began pouring concrete for retaining walls which were much larger than the footings it had previously constructed. C.R.C. added two

carpenters and two laborers to its crew. The Laborers, through its business manager, demanded that C.R.C. officially assign the stripping of forms to a crew composed equally of carpenters and laborers. The same demand was made of T. Equipment. On June 30, 1995, C.R.C. formally assigned the work of erecting and stripping forms to members of the Carpenters' Union and the work of cleaning, oiling, and moving the forms to the next job site to members of the Laborers' Union.

On the next day of work, July 5, carpenters began to strip forms from one retaining wall. Two members of the Laborers' Union climbed the wall and began to assist in the stripping. The job foreman for C.R.C. told the laborers to come down from the wall; they refused to do so. The carpenters stopped stripping and refused to continue. The police were called and removed the laborers from the job site.

On July 21, 1995, the Laborers filed a contractual grievance against both C.R.C. and T. Equipment (plaintiffs in this action). The Laborers alleged breach of the collective bargaining agreement between the Union and the main contractor, J.F. White. Arbitration was requested and an arbitration hearing was scheduled for November 14, 1995. On November 9, the Carpenters informed C.R.C. and T. Equipment that if the carpenters were removed from the stripping work, they would be pulled from the site and the Union would no longer refer carpenters to C.R.C. or T. Equipment.

On the day of the scheduled arbitration hearing, C.R.C. and T. Equipment filed an unfair labor practice charge with the National Labor Relations Board (NLRB or Board) against the Carpenters' Union. They alleged, in effect, that the Carpenters had threatened to refuse to work and engaged in other illegal activity because of the stripping dispute. The Contractors' counsel appeared before the arbitrator and took the position that the filing of an unfair labor practice charge with the NLRB deprived the arbitrator of jurisdiction. This resulted in a delay of the arbitration proceeding. The hearing terminated, after two days, on July 2, 1996.

The NLRB proceeded promptly under section 10(k) of the National Labor Relations Act to hear the dispute. On October 30, 1996, it issued its determination:

After considering all the relevant factors, we conclude that employees represented by the Carpenters are entitled to perform the work in dispute. We reach this conclusion relying on the factors of collective-bargaining agreements, company preference and past practice, relative skills and safety, and economy and efficiency of operations. In making this determination, we are awarding the work to employees represented by the Carpenters, not to that Union or its members. The determination is limited to the project known as the Old Colony Railway.

### DETERMINATION OF DISPUTE

The National Labor Relations Board makes the following Determination of Dispute.

Employees of T. Equipment Corporation and C.R.C. Co., Inc. represented by Local 624, United Brotherhood of Carpenters and Joiners of America, AFL–CIO are entitled to perform stripping of reusable panel forms on the Old Colony Railway project.

Dated, Washington, D.C. October 30, 1996

The arbitrator issued his opinion on November 4, 1996. He was fully aware of the NLRB's decision; see first paragraph below. The pertinent parts of the arbitrator's opinion follow.

The Employers suggest that the 1988 NLRB decision in *Hawkins* should control the question of arbitrability because the carpenters were awarded stripping work in [the NLRB] proceeding. However, this arbitration arises under the parties' collective bargaining agreement and concerns the parties' rights and obligations under this contract. My responsibility as arbitrator is to interpret and apply the parties' Agreement to the disputed stripping assignment. It may also be significant that the laborers union seeks an award of damages rather than an award of work so

there should be no direct conflict between this award and the NLRB decision(s). Therefore, under the clear and unambiguous language of the Agreement, I must find the grievance to be arbitrable.

All of this evidence supports the conclusion that the collective bargaining agreement was intended to have stripping of concrete forms performed by a composite crew of carpenters and laborers. This did not occur when the Employers assigned all actual stripping work to the carpenters. Therefore, I find that this assignment violated the Agreement.

As remedy, the grievants are entitled to be made whole for lost wages and benefits. At the Union's request I will retain jurisdiction over calculation of the damages for a period of 120 days should the parties be unable to agree amongst themselves.

Plaintiff–Contractors then sought a vacatur of the arbitration award in the district court, which the district court granted. This appeal followed.

## II

Before examining the cases, we think it is advisable to set forth the section of the statute under which the NLRB initially proceeds in a work assignment labor dispute between unions. 29 U.S.C. § 160(k) (also known as § 10(k)) provides:

(k) Hearings on jurisdictional strikes

Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(D) of section 158(b) of this title, the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed.

We start our analysis of the case law with the relevant Supreme Court cases. None of them directly address the issue before us, but they are a necessary part of the framework of our decision.

In *National Labor Relations Bd. v. Radio & Television Broad. Engr's Union*, 364 U.S. 573, 579, 81 S.Ct. 330, 5 L.Ed.2d 302 (1961), the Court held:

We agree with the Second, Third and Seventh Circuits that § 10(k) requires the Board to decide jurisdictional disputes on their merits and conclude that in this case that requirement means that the Board should affirmatively have decided whether the technicians or the state employees were entitled to the disputed work.

*Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964), is the Supreme Court case closest to ours. The Court pointed out that the Act and its remedies for disputes by labor unions over work assignments "come into play only by a strike or threat of a strike. Such conduct gives the Board authority under § 10(k) to resolve the strike." *Id.* at 263–64, 84 S.Ct. 401.

The Court gave its blessing to arbitration:

Since § 10(k) not only tolerates but actively encourages voluntary settlements of work assignment controversies between unions, we conclude that grievance procedures pursued to arbitration further the policies of the Act.

*Id.* at 266, 84 S.Ct. 401. Indeed, the Board often stays its own § 10(k) proceeding pending the outcome of an arbitration. *See Carey*, 375 U.S. at 271, 84 S.Ct. 401. The Court discussed the interplay between arbitration and a Board proceeding:

If by the time the dispute reaches the Board, arbitration has already taken place, the Board shows deference to the arbitral award, provided the procedure was a fair one and the results were not repugnant to the Act.

*Id.* (footnotes omitted).

Finally, for our purposes, the Court held:

Should the Board disagree with the arbiter, by ruling, for example, that the employees involved in the controversy are

members of one bargaining unit or other, the Board's ruling would, of course, take precedence; and *if the employer's action had been in accord with that ruling, it would not be liable for damages under § 301.*

*Id.* at 272, 84 S.Ct. 401 (emphasis added).

We end our survey of Supreme Court cases with a quote summarizing the history and purpose of § 10(k):

> In 1947 Congress responded to the labor unrest caused by jurisdictional disputes by adding § 8(b)(4)(D) to the National Labor Relations Act, which made it an unfair labor practice for a labor organization to induce the employees of any employer to strike in the hopes of forcing an employer to assign particular work to employees in a particular labor organization. In the belief that resolution of jurisdictional disputes was more important to industrial peace than the imposition of unfair labor practice sanctions, *NLRB v. Radio Engineers,* 364 U.S. 573, 576–577, 81 S.Ct. 330, 5 L.Ed.2d 302 (1961) (hereinafter *CBS* ), Congress at the same time enacted § 10(k), 29 U.S.C. § 160(k), to induce unions to settle their differences without awaiting unfair labor practice proceedings and enforcement of Board orders by courts of appeals.

*International Tel. & Tel. Corp. v. Local 134, Int'l Bhd. of Elec. Workers,* 419 U.S. 428, 430–31, 95 S.Ct. 600, 42 L.Ed.2d 558 (1975) (footnotes omitted).

Unfortunately, it is now obvious that the enactment of § 10(k) has not met the expectation that it would significantly reduce unfair labor practice proceedings and enforcement of Board orders by courts of appeals. It could be argued that the number of cases in this area has increased because of the tension between arbitration awards and § 10(k) determinations. As the cases illustrate, the union that loses the arbitration hearing can obtain a § 10(k) hearing before the NLRB by committing or threatening to commit an unfair labor practice.

Our circuit previously grappled with the arbitration award— § 10(k) problem in *J.F. White Contracting Co. v. Local 103 Int'l Bhd. of Elec. Workers,* 890 F.2d 528 (1st Cir.1989). The case ascended the same pro-cedural ladder as the one now before us. The contractor employer gave laborers the right to handle and install precast enclosures for electrical conduits at a construction site. The electricians initiated arbitration proceedings and obtained an arbitration award assigning them the work. The employer proceeded before the NLRB which made a § 10(k) decision that the laborers were entitled to the work. The employer then filed an action in the district court which vacated the arbitration award. In an opinion written by then Circuit Judge Breyer (now an Associate Justice on the United States Supreme Court), we affirmed. The court held that under well-established law "courts are not to enforce an arbitration award that conflicts with a § 10(k) determination." *Id.* at 529 (citations omitted). We found that the conflict between the arbitration award and the § 10(k) determination was "plain." *Id.*

In the decision, Judge Breyer discussed cases where courts of appeals had refused to vacate an arbitration award despite a claim by one party that it conflicted with an NLRB decision. He gave particular attention to *Hutter Constr. Co. v. International Union of Operating Eng'rs, Local 139,* 862 F.2d 641 (7th Cir.1988). Because *Hutter* is one of the main cases relied upon by appellant Laborers, we quote Judge Breyer's treatment of it, albeit it is dictum.

> A construction company signed a multiparty agreement in which it promised forklifting work to employees called "Operators" and also promised not to subcontract forklifting work to any contractor who was not a party to the agreement. The company then broke the latter promise by subcontracting forklifting work to a nonsigning firm, and that subcontractor, in turn, gave the work to Laborers rather than to Operators. After strike activity led to a § 10(k) hearing, (1) the NLRB told the subcontractor to assign the work to Laborers, and (2) arbitrators found the company had broken its "no subcontracting to nonsigners" promise and awarded the Operators back pay. *We can understand how a court might have found no significant conflict on these facts, for the company could obey the arbitrators' award without inter-*

*fering with the subcontractor's duty to assign forklifting work to Laborers.* In our case, however, White Co. cannot abide by its agreement with the Electrical Workers (as construed by the arbitrators) without also violating the NLRB's order to assign the disputed work to the Laborers. Consequently, the facts of this case show a far more direct and serious conflict than those in *Hutter* and the other cases cited above.

*Id.* at 530 (emphasis added).

Judge Breyer also clarified the role of § 10(k) in NLRB proceedings.

N.L.R.B. determinations under section 10(k) are not directly reviewable in this or any other court.... To obtain review of such a decision, a party must fail to comply, thereby precipitating an "unfair labor practice" proceeding in which the § 10(k) award becomes important evidence. When that proceeding culminates, as it must, in a final order, the disappointed party can bring the order into court and challenge the underlying § 10(k) determination.

*Id.* at 530–31 (citations omitted).

 The Supreme Court precedents and this circuit's case of *J.F. White Contracting Co.*, 890 F.2d 528, establish that a § 10(k) decision trumps an arbitrator's award if the two conflict. Neither the Supreme Court nor this circuit has addressed whether a § 10(k) decision should nullify an arbitrator's award when the arbitrator awards damages to one union and the § 10(k) decision allocates the work to the other union.

Although it is clear that a § 10(k) decision will trump an arbitrator's award in a case of conflict, the circuits are not in agreement as to what constitutes such a conflict. The appellant here argues that its arbitration award does not conflict with the § 10(k) decision because the arbitrator only awarded money damages to the Laborers, whereas the Board only awarded the disputed work to the Carpenters. The leading case on which the appellant relies for this position is *Hutter*, 862 F.2d 641.

In *Hutter*, the Seventh Circuit affirmed the district court's approval of an arbitrator's decision awarding the Operators' Union damages for Hutter Construction Company's breach of a collective bargaining agreement despite the fact that the NLRB in a § 10(k) determination ruled that the other union, Laborers, should be assigned the work.

The court acknowledged that when an arbitration award conflicts with an NLRB decision, the NLRB decision takes precedence. The court concluded, however, that the arbitrator's award and the NLRB determination were consistent remedies. The court reasoned as follows:

The NLRB's task and frame of reference at the § 10(k) hearing was far different from the arbitrator's. The Board had to determine the relative merit of the Operators' claim to the forklift work when compared with the claims of another union, not the merits of the Operators' claim against Hutter.

*Id.* at 645.

The Seventh Circuit re-affirmed *Hutter* in *Miron Constr. Co., Inc. v. International Union of Operating Eng'rs, Local 139*, 44 F.3d 558 (7th Cir.1995).

The Ninth Circuit discussed the interplay between an arbitration award and a § 10(k) determination in *Sea–Land Serv., Inc. v. International Longshoremen's and Warehousemen's Union, Locals 13, 63, and 94*, 939 F.2d 866 (9th Cir.1991). It concluded:

The NLRB, at least in its jurisdictional dispute-resolution capacity, is simply not an arbiter of collective bargaining agreement disputes. To allow the NLRB to supersede arbitration awards beyond what is needed to resolve the specific jurisdictional dispute at issue would undermine Congress's intent regarding the role of arbitration. *See Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261, 265, 84 S.Ct. 401, 405–06, 11 L.Ed.2d 320 (1964) ("The underlying objective of the national labor laws is to promote collective bargaining agreements and to help give substance to such agreements through the arbitration process.") (quotation omitted). An NLRB 10(k) determination takes precedence over an arbitration award, but only to the ex-

tent necessary to effectuate the 10(k) determination.

*Id.* at 873.

Despite the support *Hutter* and *Sea–Land Serv.* may provide for the appellant's position, there is another line of cases holding that a § 10(k) determination awarding work to one union conflicts with an arbitration award in favor of another union, regardless of whether the arbitrator's award is couched in terms of damages or work assignment. Thus, even in situations materially indistinguishable from the instant one, these cases hold that the § 10(k) decision nullifies the arbitration award.

The Third Circuit trenchantly explained this approach in *Local 30, United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Ass'n, AFL–CIO v. National Labor Relations Bd.*, 1 F.3d 1419 (3d Cir. 1993). In this case the employer (Gundle) filed an unfair labor practice charge against the Union. The NLRB issued a complaint against the Union alleging that picketing and the Union's continued maintenance of its suit to enforce the arbitration award, which had awarded the Union damages against the employer, constituted an unfair labor practice.

The Third Circuit upheld the NLRB, holding there was substantial evidence to support the NLRB's finding that the Union picketing had an unlawful objective and that, under the National Labor Relations Act, maintenance of a suit to enforce the arbitration award for pay-in-lieu of work was an unfair labor practice.

In the course of its opinion, the court held, "The distinction Local 30 seeks to draw between seeking the work and seeking payment for the work is ephemeral." *Id.* at 1427.

As support for this finding, it stated:

Any other result would be inconsistent with *Carey v. Westinghouse Electric Corp.*, 375 U.S. 261, 268, 84 S.Ct. 401, 407, 11 L.Ed.2d 320 (1964), where the Supreme Court held that a Board ruling on a representational issue would protect the employer from liability for damages for breach of a collective bargaining agreement as long

as the employer's actions were consistent with the Board's decision.

*Id.* at 1427.

The Third Circuit considered and expressly rejected *Hutter*, in clear and unmistakable language:

Whether or not the holding in *Hutter* is distinguishable from the issue presented here, as the Board suggests, we do not accept the distinction made in that case between a section 10(k) award based on noncontractual factors and an arbitral award of damages based on a contractual claim to the work.

. . . .

We also agree with the Board that if a union is permitted to recover damages for work awarded to another union in a section 10(k) proceeding, the policy underlying section 8(b)(4)(ii)(D) of protecting employers from the detrimental economic impact of jurisdictional disputes would be severely undermined.

*Local 30, etc.,* 1 F.3d at 1428.

The Third Circuit reaffirmed its position in *United Union of Roofers, Waterproofers, and Allied Workers, Local Union No. 30 v. Gundle Line Constr. Corp.*, 1 F.3d 1429, 1430 (3d Cir.1993). It stated tersely: "We declined to adopt the distinction proposed by Local 30 between seeking payment for work and seeking the work itself." *Id.*

In language which the district court here partially adopted, the Court of Appeals for the D.C. Circuit held:

*We think the section 10(k) award trumps the collective bargaining agreement.* The Supreme Court long ago, in *Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964), held that a union could file a grievance and compel arbitration of a dispute with a contracting employer even if the dispute was jurisdictional. If the dispute continued after arbitration and caused a section 8(b)(4)(D) charge (no such charge was brought in *Westinghouse*), the Board could give the arbitrator's award that weight it thought appropriate. However, "[s]hould the Board disagree with the arbiter ... the

Board's ruling would, of course, take precedence.... The superior authority of the Board may be invoked at any time." *Id.* at 272, 84 S.Ct. 401.

*International Longshoremen's and Warehousemen's Union v. National Labor Relations Bd.*, 884 F.2d 1407, 1413 (D.C.Cir.1989) (emphasis added).

The Sixth Circuit in *International Union, United Auto., Aerospace and Agric. Implement Workers (UAW) and its Local 1519 v. Rockwell Int'l Corp.*, 619 F.2d 580 (6th Cir. 1980), has also held, in an analogous situation, that an arbitrator's award must give way to an NLRB determination.

> We agree with the district court's holding that when an employer has been acting in accord with an ultimate NLRB § 10(k) ruling, it is not liable for damages to the disappointed union.

*Id.* at 584.

We have referred to the important cases setting forth the opposing points of view on the issue before us. We are also cognizant of the criticism by labor law observers that the NLRB's work award in virtually every case coincides with the employer's preference. *See N.L.R.B. v. International Longshoremen's and Warehousemen's Local No. 50*, 504 F.2d 1209, 1220 (9th Cir.1974), in which the Ninth Circuit stated:

> Most observers who have systematically studied the Board's § 10(k) decisions agree that the Board's statement that no factor is necessarily more important than any other is simply false. Our own independent review of the Board's § 10(k) decisions reveals that the commentators are correct in concluding that the Board's work award coincides 'in virtually every case' with the employer's preference. [FN 7]

We think it necessary to quote footnote 7, which cites to the studies made.

> C. Morris, The Developing Labor Law, 1972 Supplement at 136 (1972). This is a consistent occurrence despite the Board's protestations that employer preference is only one factor among the many to be considered. *See Local 38, IBEW (Cleveland Illuminating Co.)*, 137 N.L.R.B. 1719,

1722 (1962). Every survey undertaken of Board § 10(k) decisions bears out this conclusion. *See Atleson, supra,* note 6 at 117, 151–52; *Collister, supra,* note 5 at 57–58; Gitlow, *Technology and NLRB Decisions in Bargaining Unit and Jurisdictional Dispute Cases,* 16 Lab. L.J. 731, 745 (1963); *Johns supra,* at 52; *O'Donoghue, supra,* note 5 at 314; Note, *Jurisdictional Disputes Since the CBS Decision,* 39 N.Y.U.L.Rev. 657 (1964); ABA Section of Labor Relations Law: Report of the Committee on Development of Law under NLRA, 1964 at 124; 1965 at 445; 1967 at 99; 1968 at 110; 1970 at 97.

Impressive as these sources are, we are not disposed to indict the NLRB of employer bias on the basis of studies made more than twenty-five years ago.

## CONCLUSION

▆ Before stating our final determination, we note one important fact. The NLRB § 10(k) decision here issued prior to the arbitrator's award. We think this significant because of the Board's duty to consider an arbitration award in its § 10(k) determination. *See Carey v. Westinghouse Corp.*, 375 U.S. at 270–71, 84 S.Ct. 401. In the case at bar, no arbitration award had been made prior to the time the Board issued its determination. Although the Board presumably knew that arbitration was in process and could have deferred its decision until the award was made, its primary duty under § 10(k) was to bring the jurisdictional dispute to an end as soon as reasonably possible. *See N.L.R.B. v. Radio and Television Broad. Eng'rs Union*, 364 U.S. at 579, 81 S.Ct. 330. We cannot fault the Board for acting promptly under the Supreme Court mandate that the Board must decide under § 10(k) which union members were entitled to the disputed work. The Board did not have the arbitrator's award before it for consideration.

Another factor that compels our final determination is that the arbitration award for damages seems to mean that the Laborers are entitled to damages for the balance of the work on the entire project. It states:

All of this evidence supports the conclusion that the collective bargaining agreement was intended to have stripping of concrete forms performed by a composite crew of carpenters and laborers. This did not occur when the Employers assigned all actual stripping work to the carpenters. Therefore, I find that this assignment violated the Agreement.

As remedy, the grievants are entitled to be made whole for lost wages and benefits. At the Union's request I will retain jurisdiction over calculation of the damages for a period of 120 days should the parties be unable to agree amongst themselves.

The award is not limited to the work on the particular portion of the project where the dispute erupted. As we read the district court's opinion it proceeded on the assumption that the damages award covered the work to be done on the entire project (i.e., The Old Colony Railway). The Contractors–Employers would be paying a high price for settling a labor dispute which the § 10(k) decision was designed to accomplish without the employer paying tribute. This is contrary to the dictates of *Carey v. Westinghouse Corp.*, 375 U.S. at 272, 84 S.Ct. 401, where the Court held that "[s]hould the Board disagree with the arbiter, ... the Board's ruling would of course, take precedence; and if the employer's action had been in accord with that ruling, it would not be liable for damages under § 301."

We acknowledge that the Court has tried to reconcile arbitration awards with § 10(k) decisions in jurisdictional labor disputes. *See Carey*, 375 U.S. at 263–64, 266, 84 S.Ct. 401. There are situations, however, and this is one, where arbitration and § 10(k) decisions clash. We agree with the Third Circuit that there can be no logical distinction between "seeking the work and seeking payment for the work." *Local 30, United Slate, Tile & Comp. Roofers v. N.L.R.B.*, 1 F.3d at 1427.

*We affirm the judgment of the district court.*