**STANDARD DRYWALL, INC., et al.,**

v.

**OPERATIVE PLASTERERS' AND CE-MENT MASONS' INTERNATIONAL ASSOCIATION, LOCAL 200, AFL–CIO, et al.**

**Case No. EDCV 09–115 SGL (OPx).**

United States District Court,
C.D. California,
Eastern Division.

June 8, 2009.

Mark T. Bennett, for SDI.

Daniel M. Shanley, for the Regional Council and UBC.

Paul L. More, for respondents/cross-petitioners.

PROCEEDINGS: **ORDER GRANTING PETITIONERS' MOTION FOR SUMMARY JUDGMENT (Docket # 26)**

STEPHEN G. LARSON, District Judge.

This matter is before the Court on petitioner's motion for summary judgment. For the reasons and in the manner set forth herein, the Court **GRANTS** the motion.

On January 15, 2009, petitioners Standard Drywall, Inc. ("SDI"), the Southwest

Regional Council of Carpenters ("the Regional Council"), and the United Brotherhood of Carpenters and Joiners of America ("the UBC") (collectively, "petitioners") filed this action against Operative Plasterers' and Cement Masons' International Association, Local 200, AFL–CIO ("Local 200") and Operative Plasterers' and Cement Masons' International Association of the United States and Canada, AFL–CIO ("OPCMIA") (collectively, "respondents"). Petitioners subsequently filed a First Amended Complaint ("FAC") on January 29, 2009. The FAC seeks to vacate the January 22, 2009, award ("the arbitral award") of arbitrator Paul Greenberg, rendered under the AFL–CIO Plan for the Settlement of Jurisdictional Disputes in the Construction Industry ("the Plan"), on the grounds that it is contrary to a National Labor Relations Board ("NLRB") Section 10(k) (29 U.S.C. § 160(k)) award.

On May 26, 2009, 633 F.Supp.2d 1109 (C.D.Cal.2009), the Court issued an order denying respondents' April 2, 2009, motion to stay these proceedings pending the resolution of unfair labor practice proceedings before the NLRB and subsequent review by any federal appellate courts. In so doing, the Court held that a NLRB Section 10(k) award itself, and not any subsequent appealable order incorporating it, trumps a contrary arbitral decision.

On March 5, 2009, respondents filed a counterclaim seeking confirmation and enforcement of the arbitration award. On April 21, 2009, petitioners filed the instant motion for summary judgment on their petition to vacate. A hearing was held on June 8, 2009.

## FACTUAL BACKGROUND

The relevant facts are undisputed. The parties are involved in a jurisdictional dispute over certain plastering work SDI is performing and scheduled to perform on two public works projects for the Los Angeles Unified School District ("the projects"). SDI has assigned the plastering work on each of the projects to employees represented by the Regional Council. Respondents claim the work should have been and should be assigned to the employees they represent.

In 2006, Local 200, SDI, and the Regional Council were involved in a NLRB Section 10(k) proceeding, adjudicating a jurisdictional dispute between the Regional Council and Local 200 regarding plastering work performed on public works projects in a twelve-county area in Southern California, including the LAUSD projects. On December 13, 2006, the NLRB issued a decision awarding the work at issue to Regional Council-represented employees. *Southwest Regional Council of Carpenters (Standard Drywall, Inc.)*, Case No. 21–CD–658, 348 NLRB 1250 (2006) (the "10(k) award").

The 2006 NLRB 10(k) award is now under review as part of the NLRB's determination of unfair labor practice ("ULP") charges brought by SDI against OPCMIA and Local 200, alleging a violation of Section 8(b)(4)(ii)(D) of the NLRA, 29 U.S.C. § 158(b)(4)(ii)(D), NLRB Case Nos. 21–CD–659, 21–CD–660, 21–CD–661 and 21–CD–673 ("The 2008 NLRB cases").[1]

Respondents claim that the projects are generally subject to the LAUSD Project

1. Those ULP proceedings were the subject of a September 30, 2008, order of this Court in *Small v. Operative Plasterers & Cement Masons Int'l Ass'n, Local 200 AFL–CIO*, No. 08–CV–01039–SGL, 2008 WL 4447684 (Dkt. Nos. 27, 33). In that case, the Court granted a preliminary injunction under Section 10(*l*) of the NLRA at the request of the Regional Director of the NLRB, enjoining Local 200 from pursuing certain California state lawsuits that had the potential to conflict with the 2006 NLRB decision. That injunction was subsequently modified by the Court on November

Stabilization Agreement ("PSA"), a master project labor agreement negotiated between LAUSD and the Los Angeles/Orange County Building and Construction Trades Council ("Building and Construction Trades Council") and signatory unions.[2] Respondents argue the PSA governs the assignment of work on the projects and that the Plan is the mandatory resolution process for jurisdictional disputes.[3] Thus in January, 2009, Local 200, through OPCMIA, commenced arbitral proceedings under the Plan against UBC and SDI, seeking a reassignment of plastering work on the projects from the Regional Council-represented employees to Local 200–represented employees.[4] SDI and UBC objected to the proceedings, and allege they are not parties to any agreements that required them to submit the dispute to the Plan. On January 22, after hearing the dispute, arbitrator Greenberg issued an award ("the arbitral award"), ordering SDI to assign the plastering work on the projects to workers represented by Local 200.

Respondents maintain SDI is in breach of the PSA as long as it does not comply with the arbitral award.

17, 2008. (*Small* Dkt. No. 54.) The initial injunction was affirmed and the modifications reversed by the Ninth Circuit on March 17, 2009.

**2.** The NLRB decision explicitly refused to determine whether the parties before it were bound by the PSA. 348 NLRB at 1253.

**3.** Petitioners dispute that this is true, but do not dispute that this is Respondents' assertion.

**4.** Respondents dispute this fact and "aver that the purpose and object if the Plan proceedings is to determine, under the rules of the Plan, the union with jurisdiction over the work in dispute." RSGI 28. This dispute of phrasing is not an actual dispute of material fact.

## ANALYSIS

Petitioners make only one argument in support of their motion for summary judgment: Because the arbitral award is contrary to the NLRB's 10(k) award, the arbitral award must be vacated. In response, Respondents make several counter arguments, although the Court begins its analysis by noting the arguments that they do *not* make. First, they do not challenge the notion that the arbitral award is contrary to the 10(k) award. Second, they concede that an arbitration award that is contrary to a 10(k) decision is unenforceable. Their primary arguments,[5] therefore are (1) that only when a 10(k) award has been incorporated into a final Board decision under NLRA § 8(b)(4)(ii)(D) and all subsequent appeals are resolved does it trump contrary arbitral awards and (2) while an arbitral award contrary to a 10(k) award is unenforceable, it should not be vacated.

## FINALITY

Respondents' first argument was addressed in detail in this Court's May 26, 2009, Order Denying the Motion to Stay (Dkt. No. 37). There, the Court noted that "[O]nce the 10(k) proceedings have been completed, even though the 10(k) award is

**5.** Respondents also make a half-hearted argument that the Court lacks jurisdiction under § 301 of the LMRA because the Petitioner's Statement of Undisputed Facts refers to the arbitral award as "purportedly rendered pursuant to an alleged agreement," rather than alleging the existence of a collective bargaining agreement with more certainty. *See* Opp'n at 10, quoting SUF 5. This argument is without merit, particularly since any challenge to this court's subject matter jurisdiction became moot when Respondents filed a cross-complaint with such more certain allegations.

Additionally, Respondents attempt to argue that the NLRB's 10(k) award was incorrect. This Court has no jurisdiction to consider any such challenge.

not an appealable final disposition, several cases unanimously suggest it is that award, not any subsequent final 8(b)(4)(D) decision, that trumps a contrary arbitral decision." 633 F.Supp.2d at 1113, *citing Advance Cast Stone Co. v. Bridge, Structural & Reinforcing Iron Local Union No. 1*, 376 F.3d 734, 740 n. 5 (7th Cir.2004); *Int'l Union, United Auto., Aerospace & Ag. Implement Workers of Am. (UAW) v. Rockwell Int'l Corp.*, 619 F.2d 580, 582, 584 (6th Cir.1980); *Building Trades Employers' Ass'n v. Marchell*, No. 08 Civ. 4564, 2008 WL 2421634 at *2 (S.D.N.Y. June 13, 2008); *Holt Cargo Systems, Inc. v. Local 1242, Int'l Longshoremen's Ass'n*, No. CIV.A. 84–5831, 1986 WL 6743, at *2 (E.D.Pa.1986). As the *Rockwell International* court commented:

> Any other conclusion would lead to the anomalous result of allowing the losing party in the 10(k) proceeding to prevent the employer from reaping the full benefit of that proceeding, since review of the 10(k) decision can be had only if the losing union commits an unfair labor practice—an event entirely within the control of the losing union.

619 F.2d at 584.

■ The reasoning applied by this Court on the motion to stay is equally valid here. Notably, the language cited from *Rockwell International* came from the Sixth Circuit's affirmance of a grant of summary judgment denying enforcement of an arbitral award on these grounds, 619 F.2d at 582. The Seventh Circuit's decision in *Advance Cast Stone* affirmed the vacateur of a contrary arbitral award after a bench trial. 376 F.3d at 739–40. Like those courts, this Court finds that the 10(k) award itself allows the Court to rule on the enforceability of the arbitral award at this juncture. Respondents may not take advantage of their potential unfair labor practice and delay recognition of the NLRB's award.

### *VACATEUR v. NONENFORCEMENT*

Respondents' second argument has not previously been considered by this Court. Respondents argue that when a 10(k) award and arbitral award are in conflict, the appropriate remedy is to simply deny enforcement of the arbitral award. Petitioners argue that vacateur of the award is appropriate. As noted above, various courts have affirmed both remedies, but no court has discussed the different scenarios when one or the other is appropriate.

In support of their contention that vacateur is inappropriate here, Respondents primarily rely, both in their papers and at oral argument, on *Sea–Land Service, Inc. (Pacific Division) v. International Longshoremen's and Warehousemen's Union, Locals 13, 63, and 94*, 939 F.2d 866 (9th Cir.1991). In so doing, they rely on what appears to this Court as a complete misreading of that case. There, the parties were involved in two different jurisdictional disputes: In the first, which involved work performed at "Pelican Pond," the NLRB twice had issued 10(k) awards contrary to arbitral decisions. Subsequently, in arbitrating a *different* jurisdictional dispute between the parties, the arbitrator relied on the same theory he had articulated in the Pelican Pond cases. 939 F.2d at 868. Since neither party contested "that the NLRB's decision superseded the arbitration awards with respect to the Pelican Pond dispute," the Ninth Circuit solely considered "the impact of the awards on future labor disputes." 939 F.2d at 871. The court rejected the contention that the theory endorsed by the arbitrator in the Pelican Pond cases could not be relied upon in future cases, not because the arbitrator's reasoning was correct or "precedential," but simply because "the theory has not been rejected by the NLRB." 939 F.2d at 873. Moreover, since the theory had not been rejected by the NLRB, the

court could not say that, as a matter of law, the latter arbitral award was void as a matter of public policy. *Id.*

*Sea–Land* does not stand for the proposition, as respondents suggest, that vacateur is not an appropriate remedy where an arbitral award and a 10(k) award are in conflict *in the same case.* If respondents would like to argue the theory espoused in the arbitral award here in subsequent cases under the PSA, they are free to do so. An arbitral award in one case will not be invalidated simply because it relied on the same reasoning that was contained in an invalidated award in *another* case, unless the reasoning was the explicit basis for invalidation. This is the holding of *Sea–Land.* But in no way did the *Sea–Land* court suggest that an arbitral award in conflict with a 10(k) decision in the same case can remain valid for any period of time. The *Sea–Land* court was very clear that the 10(k) determination "supersedes" such an arbitral award.

Respondents also rely on *International Longshoremen's and Warehousemen's Union, Local 32 v. Pacific Maritime Association* ("*PMA* "), 773 F.2d 1012 (9th Cir. 1985), for the proposition that the court only has the power to declare the arbitral award "unenforceable." This too is inapposite. There, the Court of Appeals affirmed a district court's refusal to confirm an arbitration award that was contrary to a 10(k) decision. While respondents correctly note that the PMA court did not vacate the award, no party had requested such a remedy and the issue was not before the court. In fact, one of the issues in *PMA* was whether "a private party's failure to timely move to vacate an arbitration award ... foreclos[ed] the subsequent use of the supremacy doctrine to overturn the award." 773 F.2d at 1021. The failure of the court to comment on whether vacateur would be appropriate had someone sought it cannot be read in either party's favor.

Under basic principles of federal jurisprudence, there are serious questions as to whether the Court would even have the authority here to simply declare the award "unenforceable," since no one has moved to enforce it and there is no declaratory judgment action seeking a determination of enforceability. But respondents cannot avoid the clear impact of the 10(k) award on the arbitral award simply because they are not *currently* seeking to enforce the arbitral award. Respondents may not dangle that award as a sword over petitioners' head by keeping it valid for several years as it exhausts related appeals.

■ Here, unlike in *PMA,* petitioners *do* seek that the arbitral award be vacated. Thus, cases where such a remedy was at issue, and not those where the petitioning party sought enforcement, are instructive. Though none of the parties have identified it, the Court has located one case where the Ninth Circuit explicitly affirmed the vacatur of an arbitral award that ran contrary to a 10(k) award. *Frederick Meiswinkel, Inc. v. Laborers' Union Local 261,* 744 F.2d 1374 (9th Cir.1984), *cert. denied sub nom. Northern California Dist. Council of Laborers v. Frederick Meiswinkel, Inc.,* 470 U.S. 1028, 105 S.Ct. 1394, 84 L.Ed.2d 783 (1985). Even outside this circuit, respondents cannot point to one case where a court has commented that vacatur is inappropriate in this situation. Rather, numerous courts have vacated or affirmed the vacatur of arbitral awards that ran contrary to 10(k) decisions in the same case. *See, e.g., Advance Cast Stone,* 376 F.3d 734 (7th Cir.2004); *T. Equip. Corp. v. Mass. Laborers' Dist. Council,* 166 F.3d 11 (1st Cir.1999); *J.F. White Contracting Co. v. Local 103 Int'l Bhd. of Elec. Workers,* 890 F.2d 528 (1st Cir.1989) (Breyer, J.); *Eshbach Bros., LP v. Int'l Union of Operating Eng'rs,* No. Civ.A.04–0089, Civ.A. 04–0102, 2006 WL 557683 (E.D.Pa.2006);

*Holt Cargo Sys., Inc. v. Local 1242, Int'l Longshoremen's Ass'n,* No. Civ. A. 84–5831, 1986 WL 6743 (E.D.Pa.1986).

Respondents argue that the fact that here the 10(k) award is in dispute differentiates this case. However, as discussed above and in the Court's May 26, 2009, Order, a 10(k) award immediately trumps a contrary arbitral award, and respondents may not take advantage of their disobeyal of the 10(k) award and initiation of arbitral proceedings two years after the 10(k) award was issued in order to preclude that award from taking effect.

Accordingly, the Court finds that vacateur is an appropriate remedy.

## CONCLUSION

Because the parties do not dispute that the arbitral award is contrary to the NLRB's 10(k) award, and the Court finds that the 10(k) award immediately takes precedence over any contrary arbitral award, the Court **GRANTS** petitioners' motion and **VACATES** the arbitral award. In doing so, the Court also **DISMISSES** respondents' cross-petition to enforce the arbitral award.

**IT IS SO ORDERED.**