File Name:  05a0516n.06
Filed:  June 17, 2005
NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

Nos. 04-1148 and 04-1463

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| TRUSTEES FOR MICHIGAN BAC HEALTH CARE FUND; MICHIGAN BAC PENSION FUND; MICHIGAN BAC APPRENTICESHIP FUND; THE INDUSTRY ADVANCEMENT PROGRAM OF THE LABOR RELATIONS DIVISION OF THE ASSOCIATED GENERAL CONTRACTORS; THE MICHIGAN COUNCIL OF EMPLOYERS OF BRICKLAYERS; ALLIED CRAFTWORKERS, BRICKLAYERS AND TROWEL TRADES INTERNATIONAL PENSION FUND, BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL #9 MICHIGAN, | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |

       Plaintiffs-Appellants/Cross-Appellees,

v.

OCP CONTRACTORS, INC., an Ohio corporation,

       Defendant-Appellee/Cross-Appellant.

_____/

Before:      MARTIN, COOK, and LAY[*], Circuit Judges.

      PER CURIAM.  The trustees for the Michigan BAC Health Care Fund (the "Fund"), a multi-

employer health care plan regulated under the Employee Retirement Income Security Act of 1974

_____

[*]The Honorable Donald P. Lay, United States Circuit Judge for the Eighth Circuit, sitting by designation.

("ERISA"), sought to collect unpaid contributions from OCP Contractors, Inc. ("OCP") under the terms of a collectively bargained agreement ("CBA"). The district court[1] granted summary judgment on the merits to OCP, but denied OCP attorney's fees and costs. The Fund appeals summary judgment, and OCP cross-appeals the denial of attorney's fees. We affirm the district court.

## I.

The underlying facts of this case are not in dispute. OCP is a building contractor located in northeast Ohio that performs work in Ohio and Michigan. Through its membership in the Toledo Area Carpenter's Association, Inc., OCP is a party to a CBA with Toledo Union Local 886 ("Toledo Local 886"). OCP is also a party to a CBA with Michigan Local 9. Both CBAs contemplate contributions from OCP to the respective unions' health care funds for work performed in their territory. The unions share the territory of southern Michigan.

OCP was hired for two jobs in southern Michigan and assigned the work to Toledo Local 886, whose members then traveled to Michigan to complete the jobs. In accordance with its CBA with Toledo Local 886, OCP made contributions to Toledo Local 886's health care fund. Some time later while conducting a routine audit, trustees for the Fund discovered that OCP had performed work in Michigan Local 9's territory. The trustees determined that OCP owed the Fund $7,119.01 under the terms of the CBA between Michigan Local 9 and OCP. OCP denied the liability because Michigan Local 9's workers did not work on the job.

---

[1]The Honorable Bernard A. Friedman, United States District Judge for the Eastern District of Michigan, presiding.

**II.**

The Fund argues that OCP's CBA with Michigan Local 9 created an obligation to contribute to the Fund for all work done in Michigan Local 9's territory, regardless of who did the work. Relying on a recent opinion from a panel of this court that relieved the very same employer involved in this instant suit from "paying double," the district court concluded that OCP had no duty to make contributions under its CBA with Michigan Local 9. *See* Transcript for Cross-Motions for Summary Judgment Dated December 17th, 2003 at 9-13 (citing *Trustees of B.A.C. Local 32 Ins. Fund v. Ohio Ceiling & Partition Co., Inc.*, 48 Fed.Appx. 188, 192 (6th Cir. 2002) (unpublished) (*"BAC Local 32"*)).

We review the district court's entry of summary judgment *de novo*. *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 101 (6th Cir. 1995). We will affirm the district court if there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

> Our analysis in this ERISA collection action begins with the statute:
>
> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145 (Section 515 ERISA). Section 515 accords ERISA fund trustees special status akin to a holder in due course, entitling the trustees to enforce the CBA regardless of available defenses under the common law of contracts.[2] *BAC Local 32*, 48 Fed.Appx. at 192. "[O]nce an

---

[2]Trustees of an ERISA fund may enforce the CBA with the employer as third party beneficiaries. *See Cent. States, Southeast & Southwest Areas Pension Fund v. Behnke, Inc.*, 883

employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole." *Benson v. Brower's Moving & Storage, Inc.,* 907 F.2d 310, 314 (2d Cir. 1990) (citation omitted). Where the language of the CBA is clear, "the actual intent or the understanding of the contracting parties is immaterial." *BAC Local 32*, 48 Fed.Appx. at 192 (citation omitted). However, ambiguous language in a CBA purporting to create an obligation on the part of the employer to contribute will be considered in light of the parties' intent. *Id.* at 195.

In situations where an employer is exposed to conflicting CBAs that purport to impose a duty to "double pay" for the same job, the collecting trustee must show that the CBA created a contractual obligation for the employer to make contributions to both plans, even though only one union did the work. *Id.* at 198.

> [T]he real question is whether plaintiffs could demonstrate a contractual obligation to make contributions to the bricklayers funds when the carpenters union agreements purported to cover the same work, the work was assigned to employees covered by the carpenters union agreements and contributions were made in full to the carpenters union funds.

*Id.* Accordingly, OCP's contribution obligation to the Fund for the Michigan job arises, if at all, under the terms of the CBA between OCP and Michigan Local 9.

With this in mind, we turn to OCP's CBA with Michigan Local 9 to determine its duty to double pay for the Michigan jobs. The relevant language of the CBA is as follows:

> The amount of contributions shall be at the rate specified in the appropriate Article of this Agreement on actual hours worked without regard to whether the Employee was working on straight or overtime and shall be paid on all Employees working

---

F.2d 454, 460 (6th Cir. 1989).

> under this Agreement whether they are probationary, non-union Employees, temporary, seasonal, or casual Employees.

The CBA defines "Employer" as "any signatory contractor who employs Employees to perform work of the type covered by this Agreement, in any geographic area covered by this Agreement, and the Local 9 MI, hereinafter, for convenience, referred to as the 'Union' or 'Local #9' second party." The term "Employee" is defined as "Bricklayers & Allied Craftworkers Local Union #9 Michigan of the International Union of Bricklayers and Allied Craftworkers."

We conclude this language creates no duty on the part of OCP to contribute to the Fund for the work performed by the Toledo Local 886 workers in Michigan. First, the workers who did the work were not "Employees" under the terms of the CBA because they were not "Bricklayers & Allied Craftworkers Local Union #9 Michigan of the International Union of Bricklayers and Allied Craftworkers." Toledo Local 886 workers were the only workers on the Michigan jobs. Secondly, the CBA requires that the work be done "under this Agreement." The Toledo Local 886 workers did not work under OCP's CBA with Michigan Local 9, they worked under OCP's CBA with Toledo Local 886. Lastly, the CBA is simply silent on the issue of double paying. In sum, the Fund has failed to show that OCP had any contractual obligation under the CBA to pay the Fund for work done under a competing CBA. We hold that OCP is entitled to judgment as a matter of law.

## III.

OCP appeals the district court's denial of attorney's fees, arguing that the district court failed to consider all relevant factors prior to rendering its judgment. We review the district court's denial of a motion for attorney's fees for abuse of discretion. *Maurer v. Joy Techs., Inc.*, 212 F.3d 907, 919 (6th Cir. 2000). "[A]n abuse of discretion exists only when [we have] the definite and firm

conviction that the district court made a clear error of judgment in its conclusion upon weighing relevant factors." *Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985).

ERISA "confers broad discretion on a district court in making the award of attorney's fees." *Id.*; *see also* 29 U.S.C. § 1132(g)(1) ("In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."). The district court generally looks to the following factors in considering an award of attorney's fees in an ERISA action:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Id.* We have held that if no single factor or combination of factors "weighs heavily" in favor of awarding attorney's fees, denial of fees is not an abuse of discretion. *Schwartz v. Gregori*, 160 F.3d 1116, 1121 (6th Cir. 1998) (denying plaintiff's appellate attorney's fees in ERISA action).

The district court considered the relevant factors to be the Fund's degree of bad faith and the relative merits of the parties' positions. We agree. After reviewing pre-litigation correspondence between the Fund and its attorney, the district court was persuaded that the Fund acted in good faith by retaining a competent attorney specializing in ERISA collections actions, and by weighing its options in light of that legal advice. Because the Fund had thoughtfully analyzed its legal position and clearly communicated its position to OCP, the district court found that the Fund did not act in bad faith. This finding is not clearly erroneous. *See King*, 775 F.2d at 669.

As far as the relative merits of the parties' positions are concerned, we agree with the district court that the Fund's claim was not completely lacking in merit. OCP's primary argument in seeking attorney's fees is that the Fund was aware of the recent *BAC Local 32* decision which purported to foreclose the Fund's very argument in this case. We conclude that *BAC Local 32* is factually distinguishable from the present suit. *BAC Local 32* addressed the issue of double payment in the context of an implied contract to which the collecting fund was not a party. *See* 48 Fed.Appx. at 196. The present suit involves a signed CBA between the parties. Accordingly, we hold that the district court did not abuse its discretion in denying OCP's motion for attorney's fees.

The district court is affirmed.