MIRON CONSTRUCTION CO., INC., Plaintiff–Appellant,

v.

INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 139, Defendant–Appellee, Cross–Appellee,

and

Wisconsin Laborers District Council, Defendant–Appellee, Cross–Appellant.

Nos. 94–1546, 94–1646.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 20, 1994.

Decided Jan. 6, 1995.

Paul D. Lawent, Association of General Contractors of Wisconsin, Madison, WI, for Miron Const. Co., Inc.

Hugh B. Arnold, Arnold & Kadjan, Chicago, IL, Warren Kaston (argued), International Union of Operating Engineers, Pewaukee, WI, for Intern. Union of Operating Engineers, Local 139 in No. 94–1546.

John J. Toomey (argued), Hugh B. Arnold, Steven F. McDowell, Arnold & Kadjan, Chicago, IL, Warren Kaston, Intern. Union of Operating Engineers, Pewaukee, WI, for Wisconsin Laborers District Council, in No. 94–1546.

Warren Kaston (argued), International Union of Operating Engineers, Pewaukee, WI, for International Union of Operating Engineers, Local 139, in No. 94–1646.

John J. Toomey (argued), Hugh B. Arnold, Steven F. McDowell, Arnold & Kadjan, Chicago, IL, for Wisconsin Laborers Dist. Council, in No. 94–1646.

Before ESCHBACH, RIPPLE and ROVNER, Circuit Judges.

**560**

ESCHBACH, Circuit Judge.

Miron Construction Company ("Miron") filed a complaint under Section 301 of the National Labor Relations Act, 29 U.S.C. § 185, requesting the district court to compel tripartite arbitration of two sets of grievances brought against it by the International Union of Operating Engineers, Local 139 ("Operators") and the Wisconsin Laborers District Council ("Laborers"). The Operators filed a counterclaim asking the district court to compel bipartite arbitration with Miron. The Laborers, in support of Miron's motion for tripartite arbitration, filed a motion to intervene in the Operators' counterclaim and to dismiss it for want of a necessary party. The district court ordered Miron and the Operators to submit to bipartite arbitration and denied Miron's motion for tripartite arbitration and the Laborers' motions to dismiss and to intervene in the counterclaim.[1] We affirm.

## I. Background

Miron is a general construction contractor and a member of a multi-employer bargaining association, the Wisconsin Chapter of Associated General Contractors, Inc., which negotiates collective bargaining agreements with a variety of construction trade unions on behalf of the member employers. By virtue of its membership in this organization, Miron was signatory to a collective bargaining agreement with the Operators ("Area II Agreement"), which granted the Operators the exclusive right to operate forklift trucks in construction jobsites in most of Wisconsin.[2] Miron agreed to subcontract all work covered by the terms of the Area II Agreement to signatories to the Agreement.[3] Should any unresolvable grievances, disputes or complaints arise under the terms of the Agreement, Miron and the Operators agreed to submit all such disputes to final and binding bipartite arbitration.[4] The Agreement excepted no dispute from this mandatory bipartite arbitration procedure.[5]

Miron had bound itself to a similar collective bargaining agreement with the Laborers ("Laborers Collective Bargaining Agreement"), which covers the operation of mason-tending forklifts.[6] Like the Area II Agreement, the Laborers' Agreement requires all work covered under the Agreement to be subcontracted to a signatory to the Agreement.[7] Although it is obvious that the La-

---

1. The denial of the Laborers' petition to intervene and of its motion to dismiss the Operators' counterclaim for want of a necessary party provided the basis of appeal No. 94–1646, which was consolidated with No. 94–1546 for purposes of this decision. However, the Laborers completely failed to brief these issues on appeal, instead limiting its argument to the scope of Miron's appeal. Apparently, it believes that resolution of Miron's appeal will resolve its own appeal as well. Therefore, we need not consider this second subject of appeal. *See Luddington v. Indiana Bell Telephone Co.*, 966 F.2d 225, 230 (7th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 1641, 128 L.Ed.2d 362 (1994).

2. According to section 7.8 of the Area II Agreement:

The operation of elevator or forklift trucks on construction jobsites (excluding warehouse and storage yards as per Teamster Operating Engineers International Agreement) is exclusively the craft work of the Operating Engineers, and assignment of said operation shall be made to an Operating Engineer, dispatched and covered by the terms and conditions of this Agreement.

3. Section 4.1 of the Area II Agreement provided, in pertinent part:

4. Section 8.2 of the Area II Agreement provided, in pertinent part: "All grievances, disputes or complaints of violations of any provisions of this Agreement shall be submitted to final and binding arbitration by an arbitrator from the Federal Mediation and Conciliation Service."

5. Prior to 1987, the Area II agreement mandated tripartite arbitration for jurisdictional disputes. This exception was removed under the 1987 Amendments to the Agreement and was not reintroduced when the Agreement was again amended in 1990.

6. *See* Exhibit A, Jurisdictional Claims, of the Laborers' Collective Bargaining Agreement.

7. Section 9.10.1 of the Laborers' Collective Bargaining Agreement provided that

It is agreed that any work sublet and to be done at the site of the construction alteration, painting or repair of a building, structure, or

The Contractor agrees that, when subletting or contracting out work covered by this Agreement ... he will sublet or contract out such work only to a subcontractor who has signed, or is otherwise bound by, a written labor agreement entered into with the Union.

borers' Collective Bargaining Agreement conflicts with the Area II Agreement over the assignment of mason-tending forklift work, this conflict, unfortunately, is neither uncommon in the industry, nor unknown to this court.[8]

In December 1991, Miron was awarded the contract to construct an addition to the American Club in Kohler, Wisconsin. Miron subcontracted the masonry work to Bill Dentinger, Inc. Dentinger was a signatory to the Laborers' Collective Bargaining Agreement, but, according to the Operators, was not a signatory to the Area II Agreement.[9] Pursuant to its contract with the Laborers, Dentinger assigned members of that union to man a masonry forklift used to supply the bricklayer employees with material.

Claiming mason-tending forklift work was covered under the Area II Agreement, the Operators filed a grievance on March 19, 1992 seeking pay in lieu of work for violation of the union signatory subcontracting clause and requested bipartite arbitration of the dispute. The Laborers filed a similar grievance under its Agreement to determine the work was properly assigned to its workers and for pay in lieu of work in the event it was reassigned. Miron refused to submit its dis-

pute with the Operators to bipartite arbitration on the ground that the dispute was jurisdictional in nature. On June 4, 1992, Miron filed a complaint seeking tripartite arbitration among all three parties.

In the meantime, the Laborers threatened to strike if the work was reassigned. On June 12, 1992, Miron filed a § 8(b)(4)(ii)(D) unfair labor practice charge against the Laborers with the National Labor Relations Board ("NLRB").[10] These two actions formed the necessary predicate for Miron and the Laborers to petition the NLRB for a § 10(k) hearing.[11] The NLRB held a § 10(k) hearing on August 18, 1992 and awarded the work at the Kohler jobsite to the Laborers.[12] *Wisconsin Laborers District Council*, 309 N.L.R.B. 756 (1992).

During this same summer, the aforementioned set of events repeated themselves at a different jobsite. Miron was awarded the contract to construct the Kettle Moraine Correctional Institute in Sheboygan County, Wisconsin. Miron subcontracted the masonry work to Par Construction Company. Par was not a signatory to the Area II Agreement and employed members of the Laborers to operate the mason-tending forklifts. The Operators again filed a grievance seek-

other work, and when a portion of said work to be sublet is under jurisdiction of this Agreement, the work shall be sublet to a subcontractor signatory to this Agreement.

**8.** We have encountered the dispute between the Laborers and the Operators over the assignment of forklift work on a number of occasions. *See International Union of Operating Eng'rs, Local 103 v. Indiana Constr. Corp.*, 13 F.3d 253 (7th Cir.1994); *Alberici–Eby v. Local 520, Int'l Union of Operating Eng'rs*, 992 F.2d 727 (7th Cir.1993); *International Union of Operating Eng'rs, Local 103 v. Indiana Constr. Corp.*, 910 F.2d 450 (7th Cir.1990); *Hutter Constr. Co. v. International Union of Operating Eng'rs, Local 139*, 862 F.2d 641 (7th Cir.1988); *International Union of Operating Eng'rs, Local 150 v. N.L.R.B.*, 755 F.2d 78 (7th Cir.1985).

**9.** There appears to be some dispute as to whether Dentinger is a signatory to the Area II Agreement. This dispute is not relevant to the question of whether bipartite arbitration is appropriate. Rather, it is precisely the type of issue which can be resolved before the arbitrator.

**10.** Under § 8(b)(4)(ii)(D) of the National Labor Relations Act, labor organizations are prohibited

from threatening to strike in order to force an employer to assign work to members of one union rather than members of another union.

**11.** A § 10(k) proceeding is a hearing conducted by the NLRB subsequent to a § 8(b)(4)(ii)(D) claim to determine which union has the superior claim to "work in dispute." Before the NLRB may proceed with a determination of the dispute, it must be satisfied that there is reasonable cause to believe that § (8)(b)(4)(ii)(D) has been violated and work is actually "in dispute," and that the parties have not agreed on a method for a voluntary adjustment of the dispute.

**12.** According to the Board, several factors are relevant to the NLRB's determination of the dispute, including the collective bargaining agreements, company preference and practice, area practice, relative skills, and economy and efficiency of operations. *See Wisconsin Laborers District Council*, 309 N.L.R.B. 756 (1992). "The Board has held that its determination in a jurisdictional dispute is an act of judgment based on common sense and experience, reached by balancing the factors involved in a particular case." *Machinists Lodge 1743 (J.A. Jones Construction Co.)*, 135 N.L.R.B. 1402 (1962).

ing pay in lieu of work. The Laborers promptly responded with its own grievance. Miron again refused to submit to bipartite arbitration with the Operators and, on January 19, 1993, amended its complaint filed in the district court on June 4, 1992 to include the two new grievances. Miron also filed for an NLRB determination of this second dispute and the parties are still awaiting the Board's ruling. In February 1994, the district court granted summary judgment in favor of the Operators on its counterclaim and against Miron's complaint and ordered Miron to submit to bipartite arbitration with the Operators. The district court also denied the Laborers' motion to intervene and motion to dismiss the Operators' counterclaim for want of a necessary party because it failed to show how it would be prejudiced by such arbitration.

## II.  Analysis

Relying primarily on common law and policy justifications from other circuits, Miron and the Laborers argue on appeal that the jurisdictional nature of their dispute with the Operators authorizes this court to order the parties to submit to tripartite arbitration. Alternatively, they contend that the Operators' demand for bipartite arbitration for a violation of the subcontracting clause should be dismissed because it is in direct conflict with the NLRB's award of the work to the Laborers. Finally, to the extent that this circuit's precedent to the contrary on both of these arguments applies and cannot be distinguished, Miron and the Laborers invite this court to overrule such precedent.

We review the district court's grant of summary judgment de novo. Colip v. Clare, 26 F.3d 712, 714 (7th Cir.1994); International Union of Operating Eng'rs, Local 103 v. Indiana Constr. Corp., 910 F.2d 450, 452 (7th Cir.1990). All facts and reasonable inferences to be drawn therefrom are viewed in the light most favorable to the non-movant party. International Union of Operating Eng'rs v. Associated Gen. Contractors, 845 F.2d 704, 705 (7th Cir.1988). The Operators

will prevail only if there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Indiana Constr., 910 F.2d at 452; Fed.R.Civ.P. 56(c).

### A.

All parties to this case have offered to submit to some form of arbitration to resolve their respective disputes. However, this court will not rely on that general willingness to arbitrate as authority for ordering the three parties to come together and arbitrate any dispute which has arisen. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (quoting Steelworkers v. Warrior Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). The contract determines which disputes will be arbitrated as well as the method of arbitration. We show "strong deference to the grievance procedures established by the parties to a collective bargaining agreement." Laborers Int'l Union, Local 309 v. W.W. Bennett Constr. Co., 686 F.2d 1267, 1271 (7th Cir.1982). Finally, "[t]he duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty." AT & T Technologies, Inc., 475 U.S. at 649, 106 S.Ct. at 1419 (quoting John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 546–47, 84 S.Ct. 909, 912–13, 11 L.Ed.2d 898 (1964)). Our task, therefore, is to examine the Area II Agreement and determine whether the dispute between Miron and the Operators is subject to bipartite arbitration, or whether the jurisdictional character of the underlying dispute requires Miron and the Operators to join with the Laborers and submit to tripartite arbitration.

While many collective bargaining agreements do exclude jurisdictional disputes from the normal arbitration procedures,[13] the Area

---

13.  The collective bargaining agreements in Alberici–Eby, 992 F.2d at 729; Indiana Constr., 910 F.2d at 451; Hutter Constr., 862 F.2d at 642; and Operating Eng'rs, Local 150, 755 F.2d at 79 all expressly excluded jurisdictional disputes from the bipartite arbitration procedure.

II Agreement in the case at bar required bipartite arbitration for all disputes between Miron and the Operators. Unlike past versions of the Agreement, there was no requirement that the two parties submit jurisdictional disputes to tripartite arbitration. Thus, the collective bargaining agreement provides no authority for us to order tripartite arbitration among the parties.

■ Miron and the Laborers insist that we should follow the examples of other cases which have considered tripartite arbitration. However these cases are distinguished by the ability of the parties to point to a contractual mechanism authorizing tripartite arbitration. *See, e.g., Alberici–Eby,* 992 F.2d at 730; *Local 416, Sheet Metal Workers Int'l Assoc. v. Helgesteel Corp.,* 507 F.2d 1053, 1056–57 (7th Cir.1974); *Local 513, Int'l Union of Operating Eng'rs v. J.S. Alberici Construction Co.,* 936 F.2d 390, 391 (8th Cir. 1991) (in each case, the union had bound itself in the collective bargaining agreement to submit jurisdictional disputes to the multiparty arbitration procedure adopted by the AFL–CIO). Although some courts have considered tripartite arbitration without a contractual mechanism, these cases have been carefully limited to classic one-on-one jurisdictional disputes where each union explicitly claims the work is covered under the terms of its agreement. The only claimed violation of each union's respective collective bargaining agreement was the work jurisdiction provision. *See United States Postal Serv. v. National Rural Letter Carriers' Ass'n,* 959 F.2d 283, 286 (D.C.Cir.1992); *Retail, Wholesale and Dep't Store Union, Local 390 v. Kroger Co.,* 927 F.2d 275, 277 (6th Cir.1991); *United States Postal Serv. v. American Postal Workers Union,* 893 F.2d 1117, 1120 (9th Cir.1990); *Local No. 850, Int'l Ass'n of Machinists & Aerospace Workers v. T.I.M.E.– DC, Inc.,* 705 F.2d 1275, 1277–78 (10th Cir. 1983); *W.W. Bennett Constr. Co.,* 686 F.2d at 1274; *Columbia Broadcasting System, Inc. v. American Recording & Broadcasting Ass'n,* 414 F.2d 1326, 1328–29 (2d Cir.1969); *International Union of Operating Eng'rs v. Allied Constr. Employers,* No. 81–C–864, slip op. at 3 (E.D.Wis. April 18, 1983). Such disputes are thus identical to . § 10(k) proceedings before the NLRB except that nei-

ther party has engaged in a strike nor threatened to strike to force the employer to reassign the job. Each union has employed the grievance mechanisms in its collective bargaining agreements. Tripartite arbitration, therefore, may be appropriate since we would not want to force unions to engage in coercive behavior in order to get the multiparty forum that a § 10(k) hearing provides to resolve the work assignment issue. National labor policy strongly favors the voluntary private arbitration of disputes where possible. *International Union of Operating Eng'rs, Local 150,* 755 F.2d at 86.

However, no case has ordered the parties to submit to tripartite arbitration to resolve two distinct contractual grievances arising from the same set of facts. The instant case thus lacks the "requisite contractual nexus" to order tripartite arbitration since the parties have not agreed to arbitrate the merits of the same dispute. *National Rural Letter Carriers' Ass'n,* 959 F.2d at 287. Miron and the Laborers agreed to arbitrate the question of who should be assigned the work, while the Operators agreed to arbitrate the subcontracting clause dispute.

Furthermore, our decision in *Hutter Constr. Co. v. International Union of Operating Eng'rs, Local 139,* 862 F.2d 641, 645 (7th Cir.1988), forecloses any possibility that the subcontracting dispute and the jurisdictional dispute could be classified as the same contractual grievance. Not only are the facts in *Hutter* almost identical to the case at bar, but the parties are almost identical as well. Hutter Construction Company ("Hutter") was a signatory to the Area II Agreement with the Operators. Hutter subcontracted certain masonry work to Bill Dentinger, Inc., who, as in this case, was a signatory to the Laborers' Collective Bargaining Agreement, but not to the Area II Agreement. The Operators filed a grievance against Hutter for violating the subcontracting clause. Unlike Miron, Hutter did submit to bipartite arbitration. The arbitrator ruled the dispute was contractual and ordered Hutter to provide backpay to the Operators in lieu of work. The Laborers staged a work stoppage and was awarded the forklift work on jurisdictional grounds at the resulting

§ 10(k) NLRB proceeding. In the meantime, Hutter refused to comply with the arbitrator's award and brought an action to have the award vacated on the ground that the dispute was jurisdictional, and thus subject to tripartite rather than bipartite arbitration. At the time, the Area II Agreement called for tripartite arbitration in resolving jurisdictional disputes. We held that the contractual dispute could be separated from the jurisdictional dispute. Two considerations prompted this result: First, since the breach arose immediately upon subcontracting to a nonsignatory, it was irrelevant which union eventually was assigned the work; Second, characterizing the dispute as jurisdictional would unfairly avoid the agreed upon penalty for breach of the subcontracting clause. *Id.* at 644–45. The fact that Hutter would thus be obligated to pay two unions for the identical job was admittedly harsh, but one "solely attributable to Hutter's decision to enter into conflicting bargaining agreements." *Id.* at 645 n. 16.

Miron and the Laborers urge us to overrule *Hutter* and adopt the reasoning of the Eighth Circuit in *Local 513, Int'l Union of Operating Eng'rs v. J.S. Alberici Constr. Co.,* 936 F.2d 390, 391 (8th Cir.1991), where the jurisdictional and subcontracting disputes were found "so intertwined as to be one conflict." *Id.,* at 392. We decline to do this. In *Alberici,* the subcontracting dispute was nothing more than a cover for the jurisdictional dispute. The court emphasized that "six other nonsignatory subcontractors have performed work on the project without objection by Local 513." *Id.* Moreover, the court found that Local 513's initial complaints made to Alberici were confined exclusively to the work assignment issue. Only after those complaints "proved unavailing," did the union invoke the subcontracting clause. *Id.,* at 390–91. By contrast, in the instant case, the Operators have consistently enforced the subcontracting clause in the Area II Agreement, and the union raised the issue of the clause's violation in its first grievance filed with Miron.

Thus, we conclude that the district court's decision to order Miron and the Operators to submit to bipartite arbitration was well-grounded in the terms of the Area II Agreement. The subcontracting dispute between Miron and the Operators is separable from any jurisdictional dispute which might exist between the Operators and the Laborers.

## B.

Miron and the Laborers contend that even if bipartite arbitration is proper under the Area II Agreement, the NLRB's decision to award the American Club work to the Laborers in the § 10(k) hearing precludes the Operators from filing a grievance under the subcontracting clause. This assumes that the arbitrator's award will be inconsistent with the NLRB decision. When an arbitration award is in conflict with the decision of the NLRB in a § 10(k) proceeding, the NLRB decision takes precedence. *Carey v. Westinghouse Elec. Corp.,* 375 U.S. 261, 272, 84 S.Ct. 401, 409, 11 L.Ed.2d 320 (1964); *Hutter,* 862 F.2d at 645.

This court in *Hutter* held that an arbitrator's award of backpay to one union is not inconsistent with the NLRB's decision to award the work to a different union. *Id.,* 862 F.2d at 645. Miron and the Laborers attempt to distinguish this decision on procedural grounds. In *Hutter,* the arbitrator's award preceded the § 10(k) hearing whereas here the NLRB decision has come first. It is not clear why this distinction should alter our conclusion. The Laborers offer two possibilities which are easily dismissed. The first suggested distinction is that the NLRB determined that the Operators' grievance over the subcontracting clause was not meritorious and was really a claim for work. This, they suggest, should serve to bar any further adjudication of the grievance. However, the NLRB made no such factual finding. The Board relied solely on *Laborers Local 731 (Slattery Assoc.),* 298 N.L.R.B. No. 111, 1990 NLRB LEXIS 615 (1990) for its legal conclusion that a grievance seeking payment in lieu of work is sufficient to constitute a "claim for work" and place the dispute within the NLRB's jurisdiction. *Wisconsin Laborers' District Council,* 309

N.L.R.B. 756 (1992).[14] This standard is designed to meet the Board's decidedly low threshold requirement that it find reasonable cause to believe that § 8(b)(4)(D) has been violated. *See Slattery Assoc.*, 1990 NLRB LEXIS 615, at *9–10. Thus, even the factual underpinnings of this legal conclusion do not bind us in this proceeding. The second suggested distinction offered by the Laborers is that *Hutter* merely stands for the proposition that the arbitrator's award went unopposed for ninety days and therefore had to be upheld by the court as a matter of law. This is a bold mischaracterization considering that *Hutter* never once mentioned any mandatory period within which to oppose the arbitrator's award. *Hutter*'s two main holdings, that the subcontracting grievance was separable from the jurisdictional claim, and that the arbitrator's and NLRB's awards did not conflict, are the only rationales offered. *Id.*, 862 F.2d at 644–45. We therefore find neither of these proposed distinctions persuasive. Regardless of the order of the proceedings, the arbitrator will continue to consider only the legitimacy of the Operators' contractual claim, while the NLRB will consider the legitimacy of each parties' overall claims to the work, including a variety of contractual and non-contractual factors. *See Hutter*, 862 F.2d at 645. Thus, *Hutter*'s determination that an arbitrator's award of backpay to one union does not conflict with the award of work to another union in the § 10(k) proceeding is not distinguishable.

In the alternative, Miron and the Laborers invite us to overrule or harmonize *Hutter* with other cases. Their argument is that only the union who has the superior claim to the work is entitled to compensation. Since the Laborers were awarded the work, an arbitrator's decision to award pay in lieu of

the work to another union would effectively undermine the § 10(k) decision. They ask us to adopt the reasoning of the Third Circuit in *Local 30, United Slate, Tile & Composition Roofers v. NLRB*, 1 F.3d 1419 (3d Cir.1993), where continued maintenance of a suit to enforce an arbitration award contrary to a § 10(k) result was held to be an unfair labor practice. *Id.* at 1428. We decline this invitation for two reasons.

First, the NLRB itself agrees that its decision to award work to one union does not preclude the losing union from pursuing its contractual remedies against the general contractor.[15] *See Local Union 33 (Blount Brothers)*, 289 N.L.R.B. 1482 (1988). The Board in *Slattery Assoc.*, 298 N.L.R.B. No. 111, 1990 NLRB LEXIS 615 (1990), emphasized this point when it ruled that a subcontracting grievance constituted a demand for work for purposes of determining NLRB jurisdiction:

> *Blount* makes it clear that a 10(k) award does not block a union's access to
>
> its contractual remedies for breach of a union signatory subcontracting clause. Subsequent to the instant 10(k) proceeding, Iron Workers is free to continue to seek redress under its contract with Ambridge for alleged breach of contract, if Iron Workers limits its conduct to pursuing its grievance against Ambridge. Under *Blount*, such conduct is not coercive, and any charge filed with the Board concerning that conduct will be dismissed.

*Slattery Assoc.*, 1990 NLRB LEXIS 615 at *10–11. The right to pursue contractual remedies also includes the right to ask for monetary damages, including pay in lieu of work. *Blount Brothers*, 289 N.L.R.B. 1482 (1988).[16] This comports with the fundamen-

---

14. The Laborers rely on the § 10(k) hearing's concurrence for its allegation that the NLRB made a finding that the Operators' claim was not arguably meritorious. Such reliance is obviously misplaced.

15. In fact, the NLRB summarily dismissed charges that the Operators were engaging in an unfair labor practice by maintaining its grievance after the § 10(k) award. *See* letter from Joseph A. Szabo, Regional Director, NLRB re cases 30–CC–521 and 30–D–154 dated Dec. 15, 1993. (Operators' supplemental appendix at A–

21). An appeal of this decision is pending. *See* letter from Yvonne T. Dixon, Director, Office of Appeals, NLRB re cases 30–CC–521 and 30–CD–154 dated June 16, 1994. (Laborers' supplemental appendix at A–1).

16. *Iron Workers Local 433 (Swinerton & Walberg Co.)*, 308 N.L.R.B. No. 105, 1992 NLRB LEXIS 1060 (1992), contrary to the Laborers' assertions, supports the Board's position that the losing union in a § 10(k) proceeding may pursue a subcontracting clause grievance against the general contractor. In *Swinerton & Walberg*, the Board

tal purposes underlying a § 10(k) proceeding. In 1947, Congress responded to the labor unrest caused by jurisdictional strikes by establishing the § 10(k) proceeding to provide a quick and final resolution of who was entitled to perform the work. *International Tel. & Tel. Corp. v. Local 134, Int'l Bhd. of Elec. Workers*, 419 U.S. 428, 430, 95 S.Ct. 600, 603, 42 L.Ed.2d 558 (1975). These provisions were specifically designed "to protect employers from being 'the helpless victims of quarrels that do not concern them at all.'" *NLRB v. Radio & Television Broadcast Eng'rs Union, Local 1212*, 364 U.S. 573, 580–81, 81 S.Ct. 330, 335, 5 L.Ed.2d 302 (1961). However, a § 10(k) award is not designed to serve as "a safe haven for those who breach union signatory subcontracting clauses." *Slattery Assoc.*, 1990 NLRB LEXIS 615 at *11. A breach of the subcontracting clause results in a dispute between the general contractor and one union only. The identity of the employees who ultimately perform the work is irrelevant to the union's cause of action. *See Hutter*, 862 F.2d at 644. As such, it does not fit the classic model of a jurisdictional dispute "between two or more groups of employees over which is entitled to do certain work." *Radio Eng'rs*, 364 U.S. at 579, 81 S.Ct. at 334. Moreover, it is a dispute which a general contractor is not "helpless" to prevent. Therefore, it is entirely consistent with the purposes and practices of the NLRB to allow the losing union in a § 10(k) hearing to pursue its contractual remedies against the general contractor.

▪ Second, a union's mere pursuit of its contractual remedies against the general contractor, absent a demand that the subcontractor reassign the work, does not amount to coercion in contravention of the § 10(k) award. Since the subcontractor has complete control over which union actually performs the work, maintenance of an action against the general contractor cannot be viewed as a veiled attempt to force a reassignment of the work. The element of coercion is what distinguishes the instant case from *Local 30, United Slate, Tile & Composition Roofers v. NLRB*, 1 F.3d 1419 (3d Cir.1993). In *Local 30*, there was no subcontractor. The employer, Gundle Construction, was responsible both for the work assignment and for the breach of certain terms of the union's collective bargaining agreement. Thus, any action taken against Gundle, even for an unrelated breach of contract, could be interpreted as an attempt to coerce Gundle to reassign the work in contravention of the § 10(k) award. The NLRB ruling, upheld by the court in *Local 30*, thus distinguished this case from the dispute over a violation of the subcontracting clause in *Blount*. See *Local 30 (Gundle Lining Constr. Corp.)*, 307 N.L.R.B. 1429, 1992 NLRB LEXIS 900 (1992), *enforced*, 1 F.3d 1419 (3d Cir.1993). In *Blount Brothers*, the general contractor against whom the action was brought had no responsibility for the assignment of the work, whereas "Gundle itself is the employer of the employees to whom the work was awarded. The court action is therefore a collateral attack on the award itself." *Gundle Lining Constr. Corp.*, 1992 NLRB LEXIS 900 at *6 n. 4.

This distinction between an arbitration award against a general contractor and an arbitration award against the employer responsible for work assignment was recognized by the First Circuit in *J.F. White Contracting Co. v. Local 103 Int'l Bhd. of Elec. Workers*, 890 F.2d 528, 530 (1st Cir. 1989). Circuit Judge (now Justice) Breyer, writing for the court, agreed that *Hutter's* finding of no conflict made sense on its facts: "We can understand how a court might have found no significant conflict on these facts, for the company could obey the arbitrators' award without interfering with the subcontractor's duty to assign forklifting work to the Laborers." *J.F. White Contracting Co.*, 890 F.2d at 530. However, in the case before

---

found that Local 433 alleged no violation of the subcontracting clause in its grievance. Furthermore, its petition to compel arbitration did not mention the subcontracting clause. *Id.*, 1992 NLRB LEXIS 1060 at *3–4. According to the district court, "[Local] 433 contorts the history of this case in its attempt to transform it into a subcontracting clause dispute." *Id.*, 1992 NLRB LEXIS 1060 at *4 n. 2. The Board found that "S

& W, the general contractor, assigns the disputed work and is the employer against whom Iron Workers Local 433 filed a grievance." *Id.*, 1992 NLRB LEXIS 1060 at 4. Thus, the Board properly held that the maintenance of an action to compel arbitration was in contravention of its § 10(k) award. It cited *Blount Brothers* with approval, but found it inapplicable on these facts.

them, a conflict did exist since the employer was subject to completely conflicting awards. *Id.*, 890 F.2d at 529.

Thus, we conclude that the § 10(k) award does not preclude the Operators from pursuing its subcontracting clause grievance in bipartite arbitration. An arbitrator's award of backpay to one union in a subcontracting dispute is not inconsistent with the NLRB's prior award of the work to a different union in a § 10(k) proceeding. *Hutter* controls this case despite the difference in the sequence of the collateral proceedings. The NLRB itself recognizes that the losing party in a § 10(k) award may continue to pursue its contractual remedies against the general contractor. This is not coercive behavior in contravention of the § 10(k) award because it is aimed at Miron rather than the subcontractor who is ultimately responsible for assigning the work. Since the Operators only seek relief under the subcontracting clause, Miron is not incapable of complying with the orders of both proceedings.

## III.

For all of the reasons given above, we AFFIRM the district court's decision ordering Miron and the Operators to submit to bipartite arbitration to resolve the Operators' grievance.