Raymond ORRAND, et al., Plaintiffs,

v.

HUNT CONSTRUCTION GROUP, INC., Defendant.

Raymond Orrand, et al., Plaintiffs,

v.

Donley's, Inc., Defendant.

Raymond Orrand, et al., Plaintiffs,

v.

Cleveland Concrete Construction, Inc., Defendant.

Raymond Orrand, et al., Plaintiffs,

v.

B&B Wrecking & Excavating, Inc., Defendant.

Raymond Orrand, et al., Plaintiffs,

v.

Precision Environmental Company, Defendant.

Case No. 2:13-cv-481, Case No. 2:13-cv-489, Case No. 2:13-cv-556, Case No. 2:13-cv-864, Case No. 13-cv-900

United States District Court, S.D. Ohio, Eastern Division.

Signed 06/21/2016

Allen Shawn Kinzer, Daniel J. Clark, James W. Pauley, III, Vorys Sater Seymour & Pease, Columbus, OH, for Plaintiffs.

Meredith C. Shoop, Littler Mendelson PC, Frank W. Buck, Inna Shelley, Cleveland, OH, for Defendant.

## OPINION AND ORDER

James L. Graham, United States District Judge

The above actions have been brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., by Raymond Orrand, Administrator of the Ohio Operating Engineers Health and Welfare Plan, Pension Fund, Apprenticeship Fund, and Education and Safety Fund ("the Funds"), and the trustees of those Funds against defendants Hunt Construction Group, Donley's Inc., Cleveland Concrete Construction, Inc., B&B Wrecking & Excavating, Inc., and Precision Environmental Company (hereinafter "defendants" or "employers"). Defendants are construction industry employers which hire workers who are members of various unions.

Plaintiffs allege that under ERISA § 515, 29 U.S.C. § 1145, defendants are required to make contributions to the Funds under the terms of collective bargaining agreements between the Construction Employers Association ("CEA") and the International Union of Operating Engineers, Local 18 and its branches ("Operating Engineers"), to which defendants are signatory employers. The collective bargaining agreements, attached as Exhibits 1 and 2 to the Amended Complaint, were in effect from May 1, 2009, through April 30, 2012, and from May 1, 2012, through April 30, 2015. Plaintiffs seek contributions under those agreements for work (forklift and skid steer operation) which was allegedly within the jurisdiction of Operating Engineers but was performed by employees who were represented by the Laborers' International Union of North America, Local 310 ("Laborers"). Plaintiffs request

payment of contributions allegedly owed the funds, access to defendants' records for the purpose of conducting an audit, statutory interest, costs and attorney's fees, and injunctive relief.

## I. Case History

After the filing of plaintiffs' amended complaint in Case No. 2:13–cv–481, this court entered an order on September 26, 2013, denying the motion to dismiss filed by Hunt Construction, but granting Hunt Construction's motion to stay proceedings. See Case No. 2:13–cv–481, Doc. 20. On December 16, 2013, the other four cases were also stayed on motion of the defendants. The purpose of the stay was to await a decision of the National Labor Relations Board ("NLRB") regarding charges of unfair labor practices filed by defendants against Operating Engineers and Laborers pursuant to the National Labor Relations Act ("NLRA") § 8(b)(4)(ii)(D), 29 U.S.C. § 158(b)(4)(ii)(D). The proceedings before the NLRB under NLRA § 10(k), 29 U.S.C. § 160(k), involved a jurisdictional dispute between the two unions as to which union's members should be assigned work operating forklifts and skid steers on construction sites run by defendants in the Cleveland, Ohio, area. The employers alleged that Operating Engineers violated § 8(b)(4)(ii)(D) by engaging in proscribed activity, including threats of strikes and the filing of "pay-in-lieu [of work]" grievances, with the object of forcing or requiring defendants to assign the forklift and skid steer work to Operating Engineers members rather than Laborers members.

On May 22, 2014, Hunt Construction filed a notice in Case No. 2:13–cv–481 stating that the NLRB had rendered a decision on May 15, 2014. See Case No. 2:13–cv–481, Doc. 28. The NLRB resolved the § 10(k) jurisdictional conflict by awarding the disputed work to defendants' employees who are represented by Laborers in the area of defendants' operations where the jurisdiction of Laborers Local 310 and Operating Engineers Local 18 overlap. Doc. 28, Ex. 1, p. 7. A related case memorandum order filed on June 18, 2014, transferred Case Nos. 2:13–cv–489, 2:13–cv–556, and 2:13-cv-900 to the docket of the undersigned judge. By order filed on August 8, 2014, this court granted defendants' motion to consolidate the five cases. Because additional proceedings before the NLRB were anticipated, the stay in the five cases was continued. The court also granted the NLRB's motion to intervene in Case Nos. 2:13-cv-489, 2:13-cv-556, 2:13-cv-864 and 2:13-cv-900.

Following a status conference on December 19, 2014, the magistrate judge assigned to these cases directed defendants to file a motion to continue the stay, and, if appropriate, a motion for summary judgment, by January 30, 2015. On January 30, 2015, defendants filed a motion for summary judgment and for a continuance of the stay. In response to defendants' motion, the NLRB, as intervenor, filed a motion for summary judgment on February 20, 2015. The NLRB's motion addressed the issue of whether the NLRB proceedings were dispositive of the claims presented in this case, and also supported the arguments made in defendants' summary judgment motion.[1] Plaintiffs filed responses in opposition to both motions. On May 11, 2016, defendants filed a notice of an NLRB order dated May 6, 2016. See Case No. 2:13–cv–481, Doc. 44. This order adopted the April 9, 2015, decision of the administrative law judge ("ALJ") who presided over later proceedings involving defendants' complaints that Operating Engi-

---

1. The court notes that the NLRB's motion was timely filed as a response to defendants' motion, and was appropriately filed based on the NLRB's status as an intervenor.

neers refused to comply with the NLRB's May 15, 2014, decision by continuing to pursue "pay-in-lieu" grievances. Doc. 44, Ex. 1, p. 4. The NLRB found that by maintaining grievances after the NLRB's § 10(k) determination, Operating Engineers violated § 8(b)(4)(ii)(D).

These cases are now before the court on the pending motions for summary judgment and to continue the stay.

## II. Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No genuine dispute of fact is presented by the summary judgment motions. Rather, the issues presented by the motions for summary judgment are legal questions for the court.

## III. Plaintiffs' ERISA Claims

As ERISA fiduciaries, plaintiffs may bring a civil action

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

29 U.S.C. § 1132(a)(3).

The Funds represented by plaintiffs are ERISA "employee benefit plans" as defined in 29 U.S.C. § 1002(3). The Funds are also "multiemployer plans" as defined in 29 U.S.C. § 1002(37)(A). ERISA § 515, 29 U.S.C. § 1145, provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

The fringe benefit provisions of the applicable collective bargaining agreements governing contributions to the Funds apply to the defendant employers. Amended Complaint, Exs. 1 and 2, §§ 37, 38. The collective bargaining agreements also provide that "[f]ringe benefit contributions shall be paid at the following rates for all hours paid to each employee by the Employer under this Agreement[.]" Amended Complaint, Exs. 1 and 2, § 39. Defendants correctly note that no hours were paid to employees under "this Agreement," i.e., the Operating Engineers agreement, for the forklift and skid steer work at issue here because employees represented by Laborers were assigned to and paid for that work under defendants' collective bargaining agreements with Laborers. This provision in itself does not support plaintiffs' claims for contributions to the Funds.

However, the collective bargaining agreements also provide that

> the Employer shall employ Operating Engineers for the erection, operation, assembly and disassembly, and maintenance and repair of...Forklifts [and] Skidsteers ...[which] shall be the work of the Operating Engineers (only applies to in-house crew), and within the jurisdiction as assigned to the Union by the American Federation of Labor.

Amended Complaint, Exs. 1 and 2, § 10. This clause specifies that forklift and skid steer work is to be assigned to employees represented by Operating Engineers. The collective bargaining agreements further state:

> If the Employer assigns any piece of equipment to someone other than the Operating Engineer, the Employer's penalty shall be to pay the first qualified registered applicant the applicable

wages and fringe benefits from the first day of violation.

Amended Complaint, Exs. 1 and 2, § 21. Plaintiffs claim that under this "penalty" language, defendants made an unambiguous promise to pay fringe benefit contributions to the Funds for forklift and skid steer work awarded to Laborers-represented employees. Plaintiffs claim these contributions even though defendants made benefit contributions to the Laborers' funds for that work pursuant to the collective bargaining agreements between defendants and Laborers.

■ The Sixth Circuit has noted that "courts have held that the mere fact that an award of benefits could cause an employer to 'pay double' would not be sufficient to relieve the employer of its contractual obligation to make contributions to the ERISA funds." Trustees of B.A.C. Local 32 Insurance Fund v. Ohio Ceiling and Partition Co., Inc., 48 Fed.Appx. 188, 196–97, 2002 U.S. App. LEXIS 21095 at **24 (6th Cir.2002)(citing Brogan v. Swanson Painting Co., 682 F.2d 807, 809–10 (9th Cir.1982)). In situations where an employer is exposed to conflicting collective bargaining agreements that purport to impose a duty to "double pay" for the same job, the collecting trustee must show that the agreement created a contractual obligation for the employer to make contributions to both plans, even though only one union did the work. Trustees for Michigan BAC Health Care Fund v. OCP Contractors, Inc., 136 Fed.Appx. 849, 851 (6th Cir.2005).

■ Assuming arguendo that § 21, at least on its face, imposes a liability on defendants to pay contributions to the Funds for work performed by Laborers members, defendants and the NLRB argue that the NLRB's resolution of the NLRA § 10(k) jurisdictional dispute can be raised by defendants as a bar to plaintiffs' contractual claims. The NLRB further submits that such a bar is necessary to protect the NLRB's § 10(k) jurisdiction. Plaintiffs note in opposition that this court, not the NLRB, has jurisdiction over plaintiffs' ERISA claims. However, defendants do not dispute that, pursuant to 29 U.S.C. § 1132(e), United States district courts have exclusive jurisdiction to hear civil actions brought by a fiduciary under § 1132(a)(3) seeking to enforce an employer's obligations to contribute to an ERISA fund. Plaintiffs also argue that the NLRB decision cannot be used as a res judicata bar in this case, but defendants have not asserted res judicata as a defense. Rather, the question here is whether the NLRB's resolution of the work jurisdiction dispute poses a bar to the recovery of contractual damages under the collective bargaining agreement as a matter of federal labor policy. Therefore, some discussion of the nature of the § 10(k) jurisdictional proceedings relevant to this case is warranted.

IV. NLRB Proceedings

The NLRB proceedings at issue here arose from a jurisdictional dispute between Operating Engineers and Laborers regarding the assignment of forklift and skid steer work where their jurisdictions overlapped in Northeast Ohio. May 15, 2014, NLRB Decision. Under the collective bargaining agreements between CEA and Operating Engineers, the operation of forklifts and skid steer loaders was to be assigned to Operating Engineers members. Amended Complaint, Exs. 1 and 2, § 10. Likewise, under the collective bargaining agreements between CEA and Laborers, the operation of forklifts and skid steers was to be the work of employees represented by Laborers. May 15, 2014, Decision, p. 6. Donley's filed charges with the NLRB on October 18, 2012, alleging that both unions had engaged in unfair labor practices in violation of NLRA § 8(b)(4)(ii)(D), Section § 8(b)(4)(ii)(D) prohibits "a labor organization or its

agents" from engaging in, inducing or encouraging a strike or refusal to work or threatening, coercing or restraining an employer where an object of that action is

(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees of another labor organization or in another trade, craft, or class[.]

29 U.S.C. § 158(b)(4)(ii)(D). Additional charges were filed by the other employers on October 19, 2012, and the cases were consolidated for a hearing before an NLRB hearing officer.

In addressing the defendants' charges, the NLRB rejected the argument made by Operating Engineers that the employers and Laborers colluded to create a sham jurisdictional dispute. May 15, 2014, Decision, pp. 5-6. The NLRB also disagreed with Operating Engineers' contention that the pay-in-lieu grievances were lawful attempts to preserve work for its members, noting evidence that Laborers-represented employees had long performed forklift and skid steer work at all of defendants' construction projects. May 15, 2014, Decision, pp. 4-5. The NLRB found reasonable cause to believe that NLRA § 8(b)(4)(ii)(D) had been violated due to the filing of pay-in-lieu grievances by Operating Engineers and strike threats by representatives of both unions over the assignment of the disputed work. May 15, 2014, Decision, pp. 4-6.

Because the NLRB found reasonable cause to believe that § 8(b)(4)(ii)(D) had been violated, it was authorized to address the merits of the jurisdictional dispute pursuant to NLRA § 10(k), and to make an affirmative award of the disputed work. Section 10(k) provides in relevant part:

Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(D) of section 158(b) of this title, the Board

is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute.

29 U.S.C. § 160(k). After considering relevant factors, including the language of the applicable collective bargaining agreements with the two unions, employer preference and past practice, area and industry practice, relative skills and training, and economy and efficiency of operations, the NLRB awarded the disputed work to employees represented by Laborers. May 15, 2014, Decision, pp. 6-7.

Operating Engineers refused to comply with the NLRB's award by maintaining previously filed pay-in-lieu grievances and filing new grievances. After new charges were filed by the employers, the consolidated cases were brought before the ALJ for a hearing. The ALJ filed a decision on April 9, 2015, and his decision was adopted by the NLRB on May 6, 2016. See Case No. 2:13-cv-481, Doc. 44, Ex. 1. The ALJ and the NLRB again rejected Operating Engineers' arguments concerning collusion and work preservation. May 6, 2016, NLRB Decision, pp. 2-4. In particular, the NLRB quoted the ALJ's finding that, in light of evidence of defendants' consistent and long-time practice of assigning forklift and skid steer work to Laborers'-represented employees, Operating Engineers' " 'objective was not that of work preservation, but rather work acquisition.' " May 6, 2016, Decision, p. 3. The NLRB also agreed with the ALJ that Operating Engineers had violated § 8(b)(4)(ii)(D) by maintaining prior grievances and filing new grievances in an effort to undermine the NLRB's § 10(k) awards and to coerce the employers to reassign work awarded by

the NLRB to Laborers' members to employees represented by Operating Engineers. May 6, 2016, Decision, p. 4. The NLRB ordered Operating Engineers to cease and desist from unfair labor practices, such as threats to picket or strike or maintaining or filing pay-in-lieu grievances, for the purpose of forcing or requiring defendants to re-assign forklift and skid steer work to its members.

If Operating Engineers refuses to comply with the NLRB order, the NLRB can petition the Sixth Circuit Court of Appeals to enforce the order. 29 U.S.C. § 160(e). Operating Engineers can also seek review of the NLRB order in the Sixth Circuit Court of Appeals. 29 U.S.C. § 160(f).

## V. NLRB Order as a Bar to Recovery

■ Defendants and the NLRB argue that the § 10(k) award of work to Laborers members insulates the defendants from claims for contractual damages in the form of contributions to the Funds as a matter of federal labor policy. Section 10(k) requires the NLRB to decide jurisdictional disputes on their merits. N.L.R.B. v. Radio & Television Broadcast Eng. Union, Local 1212, 364 U.S. 573, 579, 81 S.Ct. 330, 5 L.Ed.2d 302 (1961). Section 10(k) "quite plainly emphasizes the belief of Congress that it is more important to industrial peace that jurisdictional disputes be settled permanently[.]" Id. at 577, 81 S.Ct. 330. "Congress enacted section 10(k) to provide the means by which an employer could protect itself from being caught in the middle of a dispute between unions." International Union of Operating Engineers, Local No. 714 v. Sullivan Transfer, Inc., 650 F.2d 669, (5th Cir. Unit A, 1981). The Supreme Court has held that although a dispute involving work assignment can be the subject of arbitration, "[t]he superior authority of the Board may be invoked [by the employer] at any time." Carey v. Westinghouse Electric Corp., 375 U.S. 261, 272, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964).

The remedy afforded by § 10(k) proceedings before the NLRB, "if invoked by the employer, will protect him." Id. at 286, 84 S.Ct. 401.

■ In keeping with Carey, courts have held that a § 10(k) award of work by the NLRB takes precedence over a conflicting arbitration award. In International Union, United Auto., Aerospace and Agr. Implement Workers (UAW) and Its Local, 1519 v. Rockwell International Corp., 619 F.2d 580, 583 (6th Cir.1980), the Sixth Circuit stated that once the NLRB decides a work assignment dispute, its determination takes precedence over a contrary arbitrator's award. The court noted that it is the "Congressional policy enunciated in Section 10(k) that makes the statutory jurisdictional dispute procedure take precedence over contractual arbitration." Id. at 585. See also Sheet Metal Workers Int'l Ass'n Local Union No. 27 v. E.P. Donnelly, Inc., 737 F.3d 879, 898–99 (3d Cir.2013)(district court erred in enforcing arbitration award of work which squarely conflicted with a later NLRB § 10(k) ruling); T. Equipment Corp. v. Massachusetts Laborers' District Council, 166 F.3d 11, 15–19 (1st Cir.1999)(§ 10(k) decision of NLRB awarding work to members of carpenters' union prevailed over arbitration decision awarding contractual damages to laborers' union members in assignment of work dispute); International Longshoremen's and Warehousemen's Union v. N.L.R.B., 884 F.2d 1407, 1411–1415 (D.C.Cir.1989)(NLRB's § 10(k) award of work to teamsters took precedence over arbitrator's award of work to longshoremen).

■ An NLRB § 10(k) determination also precludes a conflicting action for damages pursuant to the National Management Relations Act ("NMRA") § 301, 29 U.S.C. § 185, based on a collective bargaining agreement. Rockwell Internation-

al, 619 F.2d at 585 (an employer who has been acting in accord with the NLRB's order in a § 10(k) proceeding is not liable to the disappointed union for damages in a § 301 action). "Any counts found repugnant must be dismissed." Sullivan Transfer, 650 F.2d at 678. Where the NLRB has made a determination in a jurisdictional dispute, "the employer would not be liable for damages under section 301 if its actions conformed to the Board determination." Id., 650 F.2d at 677 (citing Carey, 375 U.S. at 272, 84 S.Ct. 401). Congress intended to afford employers protection when their actions conform to an NLRB § 10(k) award, and "[t]o allow a nonprevailing union to sue an employer for damages when that employer acts in conformity with a section 10(k) determination would run counter to that clearly-expressed congressional policy." Id. As the D.C. Circuit stated in International Longshoremen's and Warehousemen's Union, "the section 10(k) award trumps the collective bargaining agreement" relied upon the longshoremen, and "a union cannot force an employer to choose between a Board section 10(k) award and a squarely contrary contract claim." 884 F.2d at 1413, 1414.

█ Similarly, in Local 30, United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Ass'n, AFL–CIO v. N.L.R.B., 1 F.3d 1419 (3d Cir.1993), the court stated that "section 10(k) proceedings are intended to resolve competing claims to work, even if both groups of employees claiming the work have legitimate contractual claims." 1 F.3d at 1428. The court noted that if the union disappointed by a § 10(k) decision is permitted to seek a contractual remedy, "the section 10(k) hearing would not be serving its intended purpose of preventing work disruption by quickly and finally resolving jurisdictional disputes" and the policy of "protecting employers from the detrimental economic impact of jurisdictional disputes would be severely undermined." Id.

In fact, pursuit of a § 301 breach of contract suit that directly conflicts with a § 10(k) determination has an illegal objective and can be enjoined as an unfair labor practice. Sheet Metal Workers, 737 F.3d at 892 (citing Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 737 n. 5, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983)).

Plaintiffs argue that there is a split among the circuits as to whether a § 10(k) award takes precedence over a claim for damages under a collective bargaining agreement. They rely on Hutter Construction Co. v. International Union of Operating Engineers Local 139, AFL–CIO, 862 F.2d 641 (7th Cir.1988), in which the court drew a distinction between claims for work as opposed to claims for payment for work. See also Miron Construction Co., Inc. v. International Union of Operating Engineers, Local 139, 44 F.3d 558 (7th Cir. 1995); Brogan, 682 F.2d at 809–10. However, the distinction between work and payment for work has been rejected by courts in other circuits. See T. Equipment Corp., 166 F.3d at 19 (holding that there can be "no logical distinction" between seeking the work and seeking payment for the work); Local 30, United Slate, Tile and Composition Roofers, 1 F.3d at 1427 (distinction "between seeking the work and seeking payment for the work is ephemeral"); N.L.R.B. v. Local 1291, Int'l Longshoremen's Ass'n, 368 F.2d 107, 110 (3d Cir.1966)(the valuable part of a right to a particular job is the right to be paid for it, and a jurisdictional dispute between two groups of employees as to which is entitled to certain work is in essence a dispute as to which shall receive compensation for that work). The Sixth Circuit in Ohio Ceiling recognized the circuit split but noted that the decision in Rockwell International suggested that the Sixth Circuit would not adopt the distinction made by the court in Hutter. See Ohio Ceiling, 48 Fed.Appx.

188, 2002 U.S. App. LEXIS 21095 at **26–27.

This court concludes that there should be no distinction between seeking work and seeking payment for work in determining whether a § 10(k) order can bar a contractual claim. In any event, the cases relied on by plaintiffs which make that distinction are themselves distinguishable from the instant case on their facts. In Hutter, the Seventh Circuit upheld an arbitration award of damages in favor of one union against a general contractor even though the NLRB had awarded the work to another union in § 10(k) proceedings involving a subcontractor who had the sole authority to assign the work. As the Seventh Circuit explained in Miron,

> a union's mere pursuit of its contractual remedies against the general contractor, absent a demand that the subcontractor reassign the work, does not amount to coercion in contravention of the § 10(k) award. Since the subcontractor has complete control over which union actually performs the work, maintenance of an action against the general contractor cannot be viewed as a veiled attempt to force reassignment of the work.

Miron, 44 F.3d at 566. However, the Seventh Circuit later vacated an arbitration award entered against an employer which was in conflict with an NLRB § 10(k) award of work in proceedings involving that same employer. See Advance Cast Stone Co. v. Bridge, Structural and Reinforcing Iron Workers, Local Union No. 1, 376 F.3d 734 (7th Cir.2004). The court noted that Hutter and Miron were premised "on the unique subcontracting context in which they arose" and that they therefore did not involve a direct conflict between the arbitrator's and the NLRB's awards. 376 F.3d at 742. As in Advance Cast Stone, the defendants in this case were general contractors involved in the § 10(k) proceedings, not subcontractors.

Brogan and the supplemental authority cited by plaintiffs are also distinguishable, as they did not involve conflicting § 10(k) awards.

Plaintiffs further argue that Congress intended for actions under ERISA § 515 to be unaffected by conflicting law or determinations such as the NLRB § 10(k) proceedings in this case, and that defendants should not be permitted to raise the § 10(k) decision as a bar. Courts have limited defenses that employers may raise in ERISA collection actions to permit the efficacious recovery of delinquent contributions. Laborers Pension Trust Fund–Detroit and Vicinity v. Interior Exterior Specialists Construction Group, Inc., 394 Fed. Appx. 285, 286 (6th Cir.2010). However, some defenses have been permitted, including the illegality of the contributions, fraud in the execution of the contract, and certain contract termination defenses. Operating Engineers Local 324 Health Care Plan v. G & W Constr. Co., 783 F.3d 1045, 1052 (6th Cir.2015).

In Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982), the Supreme Court rejected a similar argument that ERISA § 515 should prevail over labor law. In that case, Kaiser argued that a requirement in the collective bargaining agreement for contributions to union trust funds based on coal purchased from suppliers who did not have a contract with the union violated NLRA § 8(e), 29 U.S.C. § 158(e), the "hot-cargo" provision. "The 'touchstone' and 'central theme' of § 8(e) is the protection of neutral employers, such as Kaiser, which are caught in the middle of a union's dispute with a third party." Id. at 84, 102 S.Ct. 851. Kaiser contended that the contributions requirement penalized Kaiser for dealing with other employers who do not have a contract with the union and defeated the major purpose of prohibiting "hot-cargo" provision, that being to protect employers

such as Kaiser from being coerced into aiding the union in its organizational or other objectives with respect to other employers. Id. at 78, 102 S.Ct. 851.

The Supreme Court held that a federal court could entertain the merits of Kaiser's defense that the contributions provision was illegal under NLRA § 8(e). Id. at 83–86, 102 S.Ct. 851. The Supreme Court noted that ERISA § 515 "explicitly requires employers to contribute to pension funds only where doing so would not be 'inconsistent with law[.]' " Id. at 87–88, 102 S.Ct. 851. The Court discussed the legislative history behind § 515 and noted that the "legislators did not say that employers should be prevented from raising all defenses; rather they spoke in terms of 'unrelated' and 'extraneous' defenses." Id. at 88, 102 S.Ct. 851 (citing 126 Cong. Rec. 23039 (1980)). See also Operative Plasterers' and Cement Masons' Local # 18 Annuity Fund v. J.P. Phillips, Inc., 573 F.Supp.2d 1059, 1064 (C.D.Ill.2008)(employer could assert arbitration award and consent decree which settled jurisdictional dispute and established that Local # 18 had no right to the work in question as defense to fund's § 515 action seeking payment of contributions); Cement Mason's Union Local No. 592 Pension Fund v. Zappone, 501 F.Supp.2d 714, 720–723 (E.D.Pa.2007)(employer seeking to bar § 515 claim for contributions may raise national arbitration panel award of work to a different union as a defense); Ohio Ceiling, 48 Fed.Appx. 188, 2002 U.S. App. LEXIS 21095 at **28 ("Looking at the

basis for the protections afforded to ERISA plans under § 515, nothing suggests that it was intended to afford ERISA fiduciaries a weapon against employers in undeclared jurisdictional disputes with competing unions.")

The Supreme Court has also stated:

> The power of the federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of the public policy of the United States as manifested in . . . federal statutes. . . . Where the enforcement of private agreements would be violative of that policy, it is the obligation of courts to refrain from such exertions of judicial power.

Hurd v. Hodge, 334 U.S. 24, 34–35, 68 S.Ct. 847, 92 L.Ed. 1187 (1948). Although there is nothing illegal per se about a requirement to pay contributions to the funds of more than one union, see Ohio Ceiling, 48 Fed.Appx. 188, 2002 U.S. App. LEXIS 21095 at **24, the strong congressional labor policies embodied in the NLRB's § 10(k) jurisdiction have led courts in the previously cited cases to give precedence to § 10(k) awards and to decline to enforce conflicting arbitration awards or to entertain conflicting contractual claims.

 Plaintiffs, as trustees for the Funds, attempt to distance themselves from Operating Engineers' efforts to obtain the disputed work. Although benefit funds are distinct legal entities, they do not exist in a vacuum, and their interests can overlap those of the union.[2] In this

---

**2.** See, e.g., Rhode Island Carpenters Annuity Fund v. Trevi Icos Corp., 533 F.Supp.2d 246, 249–54 (D.R.I.2008)(awarding attorneys fees to employer where fund used § 515 action as "a jurisdictional stalking horse" in a dispute over work); Marshall v. Blasters, Drillrunners, and Miners Union, Local 29, No. 78 Civ. 4619, 1980 WL 2150 at *3 (S.D.N.Y. April 14, 1980)("The Courts have recognized the potential for close interrelationships between a un-

ion and jointly-trusted benefit funds associated with it[.]"). Courts have even stated that under certain circumstances, fund fiduciaries can qualify as agents of a labor organization for purposes of engaging in § 8(b)(4) unfair labor practices within the NLRB's jurisdiction. See Griffith Co. v. N.L.R.B., 660 F.2d 406, 410 (9th Cir.1981)(action of trustee may be attributed to union where trustee's acts were directed by union officials); N.L.R.B. v.

case, the Funds are third-party beneficiaries of the collective bargaining agreements negotiated by Operating Engineers. See Laborers Pension Trust Fund, 394 Fed.Appx. at 286. Plaintiffs seek contributions for the Funds, which exist for the benefit of Operating Engineers members, not Laborers members. Defendants have submitted affidavits stating that the names of the Laborers' members listed in the amended complaint as being the employees who performed the work for which contributions are sought were provided to Operating Engineers during the NLRB § 10(k) proceedings. The claims for contributions are based on the same contract language, referred to by the ALJ as "work preservation" clauses, which formed the basis for the "pay-in-lieu" grievances filed by Operating Engineers, see April 9, 2015, ALJ Decision, pp. 7, 10, 12.

The claims for contributions asserted here amount to claims for liquidated damages for the failure to assign work to Operating Engineers members, work which the NLRB has decided that they are not entitled to perform. Plaintiffs' claims directly conflict with the NLRB's § 10(k) determination that Operating Engineers members were not entitled to the work in question. If the Funds were to succeed on their ERISA claims, this would put economic pressure on defendants to assign the disputed work to Operating Engineers members in violation of the NLRB § 10(k) order, regardless of plaintiffs' intentions or the merits of their contract claims. Allowing these ERISA claims to proceed would undermine the congressional policy behind the grant of § 10(k) authority to the NLRB, that being to definitively and expeditiously resolve jurisdictional disputes and to relieve employers of the burdens of being caught in the middle of such disputes. For purposes of this litigation, the NLRB's 10(k) award is final. See Rockwell International, 619 F.2d at 584 (rejecting argument that NLRB's § 10(k) determination should not be treated as final because of the possibility of later appellate proceedings); see also Advance Cast Stone, 376 F.3d at 740 n. 5.

The court concludes that the defendants may assert the NLRB § 10(k) award awarding the disputed work to Laborers' members as a defense to plaintiffs' § 515 action for contributions. The court further concludes that the NLRB § 10(k) award bars plaintiffs' ERISA claims for contributions in these cases. Defendants and the NLRB are entitled to summary judgment.

## VI. Request for Continued Stay

The court's decision to grant the motions for summary judgment renders moot the request for a continuance of the current stay. The court recognizes that if plaintiffs appeal this court's decision, defendants will be forced to incur additional litigation expenses. However, this is unavoidable, because even if appellate proceedings are filed by Operating Engineers or the NLRB regarding the § 10(k) order, those proceedings may not address the ERISA issues presented in this case. The court concludes that the entry of final judgment in this case is warranted to allow appellate review of these issues to go forward.

## VII. Conclusion

In accordance with the foregoing, the motions for summary judgment are granted, and the motion for a continued stay is

---

Construction and General Laborers' Union Local 1140, 577 F.2d 16, 20–21 (8th Cir.1978)(upholding contempt citation against union for picketing organized by fund trustee who was also a union officer to protest minor arrearage in employer's fund contributions).

denied as moot. The clerk shall enter judgment in favor of defendants.